## Nathan Winslow vs. Samuel N. Bailey & al.

Where a paper is offered in evidence to prove a contract to be fraudulent, its admissibility is to be determined by the Court, and not left to the jury for their decision. But when sufficient evidence has been introduced, in the opinion of the Court, to warrant the jury in inferring, that the paper was used as an inducement to enter into the contract alleged to be fraudulent, it may properly be admitted in evidence, with instructions to the jury to disregard it, unless the proof was satisfactory to them, that it was used for such purpose.

In an action on a note given as the consideration of an assignment of the bond of a third person for the conveyance of a tract of land, on payment of a certain sum within a certain time, the defendant may give evidence that the contract was fraudulent without returning the bond, if the time had expired before he had knowledge of the fraud.

Exceptions from the Court of Common Pleas, Perham J. presiding.

Assumpsit on a note payable to the plaintiff or order in 60 days, dated *May* 28, 1835. The defence set up was, that the note was obtained by fraudulent and false representations. It was proved, that the note was given in part payment of the consideration for the assignment of a bond from one *David Haynes* and others to the plaintiff, conditioned to convey a tract of land within ninety days, on payment of a certain sum. The defendants offered in evidence a certificate of one *Jameson*, stating the quantity of timber there was upon the land, and alleged that it was false, and known to the plaintiff at the time to be false, and that it was used by the plaintiff to defraud the defendants. To its admission the plaintiff objected. The Judge did not then admit it, but after the introduction of certain evidence, stated in the opinion of the Court, he did admit the paper, and directed the jury, that if they were not satisfied, that it had been used to induce the defendants to make the purchase, from the proof, together with the circumstances of the paper having been in the possession of the plaintiff a short time before the sale of the bond, and in a few days after in the hands of the defendants, it would not be evidence in the case. The plaintiff's counsel requested the Judge to instruct the jury, that if the note was obtained by false pretences, it was the duty of the defendants to return and restore the bond assigned, before its

expiration. The Judge did not give such instructions but did instruct them, that the defendants were not bound so to do, unless they had ascertained, that the statements were false and fraudulent before the expiration of the bond. The verdict being for the defendants, the plaintiff filed exceptions.

*Cutting*, for the plaintiff.

The Court ought not to have permitted the certificate to go to the jury, until the defendants had shown, that it had been used to induce them to purchase the bond. And this question was to be decided by the Court, and not left to the jury. 5 *Amer. Com. L.* 183, *and cases there cited.* Improper testimony ought not to be suffered to go to the jury, and it is not sufficient, afterwards, to direct the jury not to regard it. *Penfield* v. *Carpenter*, 13 *Johns. R.* 350; *Irvine* v. *Cook*, 15 *Johns. R.* 239. To suffer improper evidence to go to the jury, with instructions to disregard it unless certain other facts are proved, is transferring the duties and responsibilities of the Court to the jury, and depriving the other party of all remedy, if the jury decide wrong. The best evidence to show the inducement should have been produced, for fraud is not to be presumed. Here was no evidence whatever, and the paper was improperly before the jury. 4 *Mass. R.* 646 ; 5 *Mass. R.* 305 ; 1 *Peters*, 596 ; 19 *Johns. R.* 345. The Judge should have instructed as requested, that if the defendants would rescind the contract, they should have returned, or offered to return the bond. 4 *Mass. R.* 502 ; 15 *Mass. R.* 319.

*McGaw* and *Poor*, for the defendants, insisted, that the argument for the plaintiff was mainly founded on an erroneous view of the facts. The paper was not permitted to be read to the jury, until sufficient evidence had been introduced to warrant the jury in inferring that it had been used in the fraud. If the testimony had a reasonable tendency to prove the issue it is sufficient. 2 *H. Bl.* 296 ; 3 *Johns. R.* 235 ; 2 *Day*, 205. The jury have found, that the fraud had not been discovered by the defendants, until after the time limited in the bond had expired. It was then mere waste paper, of no value to any one, and it could not be necessary to go through the useless form of returning it.

The opinion of the Court was by

EMERY J. — The suit is on a note of the 28th of *May*, 1835, given in payment for a bond assigned by the plaintiff to the defendant.

The defendant resisted payment, because he alleged, that the note was obtained by false representations of the quantity of timber on lands reserved for public use in the town of *Chester*, in the county of *Penobscot*, containing 1000 acres more or less, for which the bond was given to *Winslow*. There was a certificate of *Jeremiah Jameson*, dated *May* 14, 1835, that he had explored the tract, and that it contained 10,000 feet of the best quality of pine timber to the acre in his opinion.

It was also proved, that the plaintiff between the 10th and 20th of *May*, 1835, had been on to the land, and that there was very little timber on the tract. And it was proved, that this paper was in the plaintiff's possession at and about the time it was made, and that he used it to induce others to purchase the land, and was in his possession a short time before the sale of the bond, and a few days after in the hands of one of the defendants. After these facts and circumstances were proved, the defendants offered the *Jameson* certificate which they alleged was false.

To the admission of this paper in evidence, to show that it was used by the plaintiff in the sale of the bond to induce the defendants to purchase, the plaintiff objected, until proof was introduced to shew that it was so used. And it is insisted, that the proof of this fact should have been addressed to the Court, that it was a fact to be decided by the Court, and exclusively within their province. We conceive with the plaintiff's counsel, that the authorities cited by him do establish, that it is the exclusive right of the Court to decide on the legality and competency of all testimony, which is to be read or given to the jury.

That the certificate was made by *Jameson*, was not contested. That the plaintiff had it in his possession at and about the time it was made being proved, as well as the fact that the plaintiff had it in his possession a short time before the sale, and had used it to induce others to purchase the bond, would not alone, be evidence that it was used to induce the defendants to purchase. It was therefore necessary to exhibit some other proof, by which the Court

should be persuaded to the conviction, that it ought to go to the
jury as tending to maintain the ground of defence. *That proof
was given of the subsequent possession of this very paper by one
of the defendants.* We think this well justified the Court in per-
mitting it to be read. The subsequent remarks of the Court were
full of good sense, and were of the most favorable character towards
the plaintiff's case; that if the jury were not satisfied that it had
been used to induce the defendants, it would not be evidence in the
case. Though fraud is not to be presumed, it is usually proved by
circumstances. *It is most natural to suppose* from the circum-
stance that the plaintiff obtained the certificate on the 14th of
*May,* 1835, of the quantity of pine timber of the best quality to
the acre on the tract, and had used it before the sale to induce
others to purchase, *that it was a principal consideration of him-
self and others, with whom he should deal, to take the land thus
loaded with a most valuable commodity.* This may properly be
presumed. It is not pretended that there were any gold or silver
mines on it, or slate or granite quarries to work upon the imagina-
tion of purchasers. The defendants having in their possession this
paper, did come before the jury with strong moral evidence, that
they received it from the plaintiff, in a rightful manner. *He never
complained,* that it had been *wrongfully withdrawn.* It was most
natural to suppose it would be delivered over by him to the pur-
chasers, *with the design that it should be accredited.* But if it was
not so done, he had the liberty to call upon *Wilson,* the witness, or
introduce any testimony to render it doubtful to the jury, whether
it had been so employed.

The instruction of the Judge, that the defendant was not bound
to restore the bond assigned before its expiration, unless he had as-
certained that the statements were false and fraudulent before the
expiration of the bond, was entirely right.

It would be utterly absurd to suppose the defendants were at
liberty to rescind the contract, until they had ascertained the worth-
lessness of the purchase, and the false and fraudulent representations
of the plaintiff. Yet, *had these facts been ascertained before the
expiration of the term limited by the bond, it ought to have been
restored.* For though when one has been practicing a fraud to
effect the sale of a bond to one person, he who so practices, has

but slight claim on the one attempted to be made a victim, and it might at first appear proper, that the instrument of deception should be impounded, yet it is to be remembered, that *on the return of the papers, the plaintiff might possibly have effected a sale fairly without any misrepresentation to some subsequent purchaser. But when the defendants discovered what ought to relieve them, the bond had lost vitality, by lapse of time, but without any fault on the part of the defendants.*

*The exceptions are overruled.*