SCHMIDT, Plaintiff in error, vs. THE STATE, Defendant in
error.

*June 2—June 25, 1919.*

*Forgery: Intent to defraud: Evidence: Imitation of signature of
another.*

1. The inferences of fact to be drawn from the evidence as to
   whether a bank account belonged to the defendant or to an em-
   ployee in whose name the deposit was made, being in dispute,
   a finding by the court that the defendant committed a forgery
   in drawing a check on the account and signing the employee's
   name thereto is sustained.
2. The fact that no attempt was made to imitate the employee's sig-
   nature is not conclusive, it being sufficient under secs. 4454,
   4455, Stats., if there was an intent to injure or defraud.

ERROR to review a judgment of the municipal court of
Milwaukee county: A. C. BACKUS, Judge.   *Affirmed.*

The plaintiff in error, hereinafter called the defendant,
having waived a jury trial was convicted in the municipal
court of Milwaukee county of forgery of a bank check for
$6, and brings his writ of error to reverse the judgment.
The actual facts were not greatly in dispute, but rather the
inferences of fact to be deduced therefrom.   The defendant
was engaged in the piano and phonograph business in Mil-
waukee in 1917 and the early part of 1918, and the complain-
ing witness, Junkerman, whose name is alleged to have been
forged to the bank check in question, was employed by the
defendant as a salesman.   In the latter part of 1917 the de-
fendant became financially involved, and in December, 1917,
a bank account was opened at the First National Bank in the
name of Junkerman, in which all the amounts received in
the defendant's business were deposited and out of which
moneys to pay the bills of the business were drawn by check
signed by Junkerman.   Defendant testifies that this was
done at his request because he had had business reverses and
was afraid of his creditors.   Junkerman, on the other hand,
claims that he opened this account in his own name because

the defendant was gone for a week and he had no place to put the money coming in. While this account was thus kept, Junkerman loaned the defendant $300 and put the money into this account. Checks on this account for disbursements in the defendant's business were drawn exclusively by Junkerman. This account was closed February 26, 1918, and another account opened in Junkerman's name in the East Side Bank. The defendant claims that this latter account was but a continuation of the First National Bank account and was really his own account kept in Junkerman's name. Junkerman, on the other hand, claims that while the moneys deposited in this account were moneys coming in from the business, they were turned over to him by *Mr. Schmidt* to apply on the debt which he *(Schmidt)* owed Junkerman, and became his money; also that while he (Junkerman) drew some checks on that account to pay bills against *Schmidt* they were simply advances made to *Schmidt* at his request out of his (Junkerman's) own money. On April 25, 1918, *Schmidt* drew the $6 check in question on the East Side Bank, signed "W. C. Junkerman," payable to his own order, and indorsed it to one Oberle to pay a debt of his own. He issued four or five other checks of the same kind at about the same time. Payment of them was refused at the bank, and when Junkerman found out that they had been issued a few days later and remonstrated with *Schmidt* he *(Schmidt)* said, "If you feel that way about it I will make good the checks." *Schmidt* afterwards paid the checks. No attempt was made to imitate Junkerman's signature in writing the checks. *Schmidt* claims he had an understanding "in a casual way" with Junkerman that he might sign checks on this account. He signed no others and is still indebted to Junkerman. Junkerman denies that there was any understanding with *Schmidt* that he could draw checks on the account at the East Side Bank, and claims that the moneys in that account were his own individual moneys. Junkerman claims that he quit working for *Schmidt* about May 1, 1918, when

he found out about the issuance of the false checks, but *Schmidt* claims that he (Junkerman) continued to work for him till the 15th or 18th of May, when the business ceased.

For the plaintiff in error there was a brief by *Doerfler, Bender & McIntyre* of Milwaukee, and oral argument by *Christian Doerfler.*

For the defendant in error there was a brief by the *Attorney General, Winfred C. Zabel,* district attorney of Milwaukee county, and *Arthur H. Bartelt,* assistant district attorney; and the cause was argued orally by *Mr. Zabel* and *Mr. Bartelt.*

Winslow, C. J.    Two contentions are made by the defendant, viz.: (1) the funds on deposit in the East Side Bank were in fact his own funds, hence the check was drawn on his own bank account; and (2) no intention to defraud any one appears from the evidence, especially in view of the fact that no attempt was made to imitate Junkerman's signature.

As to the first contention it may freely be admitted that there was room in the evidence to find that the account at the East Side Bank was in fact the defendant's account kept in Junkerman's name, but, on the other hand, Junkerman's testimony was positive that it was his own account and that the money on deposit was his own money.

There was nothing incredible or even improbable about Junkerman's version of the matter.    It is undisputed that the defendant was considerably indebted to Junkerman and that he was seriously embarrassed.    Such an arrangement as Junkerman testifies to was natural enough, and there are facts which make it appear probable.    For instance, it is admitted that no one except Junkerman drew any checks on that account until the drawing of the check in question here, and the bank was never informed that any one except Junkerman had authority to draw checks thereon.    It is also admitted that when Junkerman remonstrated with the defendant about the drawing of this check he did not even claim

to have a right to do so, but proceeded to settle up this and several other checks issued at about the same time. The trial court had the advantage of personal contact with the witnesses, and we do not feel that we can say that its conclusion in this regard is not supported by the evidence.

As to the second claim practically the same general considerations apply. The question of a man's intent is generally to be determined by considering his acts and the surrounding circumstances and drawing the conclusion as to his state of mind therefrom. The fact that no attempt was made to counterfeit Junkerman's signature is to be considered, but cannot be held to be conclusive. If there was an intent to injure or defraud any person, either Junkerman, the bank, or the person to whom the false check was given, it is sufficient. Secs. 4454, 4455, Stats. We are unable to say that the trial court was wrong in drawing the conclusion which it did.

*By the Court.*—Judgment affirmed.

SIEBECKER and OWEN, JJ., dissent.