STATE, Respondent, vs. ARNDT, Appellant.

*October 25—November 26, 1946.*

For the appellant there was a brief by *Philip Lehner* of Princeton and *Brazeau & Graves* of Wisconsin Rapids, and oral argument by *Mr. Theodore W. Brazeau* and *Mr. Lehner*.

For the respondent there was a brief by the *Attorney General*, and *William A. Platz*, assistant attorney general, and oral argument by *Mr. Platz* and *Mr. J. L. McMonigal*, district attorney of Green Lake county.

FRITZ, J.   On and prior to July 23, 1945, the defendant, Junior E. Arndt, was the cashier and in charge of the management of the Kingston-Dalton State Bank.   All transactions stated herein occurred in 1945.   George W. Buchholz had a savings account and also a checking account in the bank; and he had subscribed for four shares of the bank's stock at a total par value of $400, which he was to pay upon the issuance and delivery to him of the stock certificate.   He did not receive the certificate until in September or October.   On July 23, 1945, Arndt, without authority from Buchholz or his knowledge, wrote a withdrawal slip for $400 and signed Buchholz's name thereto and thereby withdrew $400 from Buchholz's savings account.   Arndt testified the $400 were applied on Buchholz's stock subscription.   On August 6th Buchholz gave his check for $400 to the bank to pay for the stock, and on that date this check was charged to his checking account and a credit of $400 was entered by Arndt in Buchholz's savings account.   On August 10th, without authority from Buchholz or his knowledge, Arndt wrote a withdrawal slip for $400, to which he signed Buchholz's name, and withdrew that amount from the latter's savings account.   All those transactions

were posted to the bank's ledger sheet of Buchholz's savings account, but were not entered in his savings-account passbook until about November 14th. Each of the withdrawal slips was written in Arndt's normal handwriting with no attempt to simulate that of Buchholz. They were filed with other withdrawal slips in the bank, and Arndt testified that he left them there as a memorandum showing what he had done. On November 14th or 15th Arndt came to see Buchholz and (according to the latter's testimony on the trial) Arndt then said he had withdrawn $400 from Buchholz's savings account to pay for Buchholz's purchase of his bank stock, and had forgotten to put that amount back in the account; but that he had the money and would return it to the account after the examiners were through at the bank; that Arndt asked Buchholz to allow him to take his savings-account passbook to make the correction entry in it; that Buchholz let Arndt have the book and he returned it later, after entering the two withdrawals and the one deposit; but that Buchholz did not know the second amount was entered until the examiner drew his attention to it on the following Monday night. On November 15th Arndt resigned as cashier and so informed Buchholz. Buchholz also testified that on passing Arndt's house on November 17th the latter called in Buchholz and gave him the $400 in currency, but he did not ask for any explanation because Arndt had told him he had paid for the stock. When the examiner asked Buchholz for the $400 he gave the money to the examiner who put it in a sealed envelope in the bank vault. Buchholz turned the $400 over to the examiner, stating that he did not know whose it was, and the examiner impounded it in the bank in a sealed envelope.

On the trial there was also proof that on November 21st Arndt, in answer to questions put by the district attorney, stated the following: He had no written authority, but he understood he had authority from Buchholz to withdraw $400 from his savings account and apply it in payment for his stock,

whenever the time was there to put through the stock. The July 23d withdrawal slip is on the transfer of $400 to pay for Buchholz's stock and the $400 went to the stock subscription account. When Buchholz on August 6th brought his check for $400 it was credited to his savings account. Arndt cannot say whether he told Buchholz his stock was already paid but might have mentioned that he had transferred the stock. Then, in statements which are conflicting and somewhat confused, Arndt stated that ten days later he withdrew the $400 from Buchholz's savings account; that he took the cash out of the bank; that it was not transferred to any other account; that the money never went into his possession; and that neither the July 23d nor August 10th withdrawals came into his possession. Arndt stated also he did not have possession of Buchholz's bankbook on November 15th or 16th or deliver the book or money to him about those dates; and that since Arndt was out of the bank he did not talk to Buchholz and had no further financial transactions with him. In Arndt's subsequent testimony on the trial there are the following statements, some of which are contradictory in some material respects, to wit:

There was no shortage while he was in the bank. On August 6th he was not sure Buchholz was going to take the stock and finally on Saturday afternoon (August 4th) he deposited $400 of his own funds in Buchholz's account to offset the $400 withdrawal and the ticket was dated August 6th, the following Monday. He placed the $400 in an envelope marked "Geo. Buchholz stock transaction" and filed it with the subscription list. The $400 withdrawal ticket (August 10th) Arndt put through to offset the $400 he had previously deposited. After Arndt resigned he paid the $400 in cash to Buchholz. The money was in the bank all the time and Arndt had no personal benefit in any way. He was not authorized to sign the August 10th withdrawal receipt and did not say a word to Buchholz about withdrawing the money from his account. The stock certificates were not delivered to or received by Buchholz when Arndt left the bank. When Buchholz gave his check for $400 Arndt said nothing that the stock had been

paid for—did not talk about it. Arndt cashed the check and placed the currency in an envelope marked "Geo. Buchholz account." He put the August 10th withdrawal of $400 in his own pocket to take care of the deposit he made of $400. It was his own money. He left the $400 in the bank files. He intended to give it back to Buchholz. He took it out of the bank and carried it around possibly a day.

The bank examiner testified that in examining the bank's books on November 13th he found that the account of Buchholz was short $400; and that on November 20th Buchholz brought the $400 in currency.

On behalf of defendant it is contended that the signing or making of the withdrawal slip by him on August 10th, without any simulation of Buchholz's handwriting, was not forgery in any sense; that the $400 did not at any time pass into defendant's hands, or were ever used by him or credited to his account, or in any manner controlled or converted by him, and there was no shortage of accounts or loss to anyone; that there was no deceit and no such intent to defraud as must be proven in order to convict under the provision in sec. 343.56, Stats., that "any person who shall falsely make, alter, forge or counterfeit . . . any order . . . or any accountable receipt for money . . . with intent to injure or defraud shall be punished," etc., and that therefore the evidence does not warrant the jury's verdict that Arndt was guilty of the offense charged in the information.

Defendant's contentions cannot be sustained. To warrant a conviction under sec. 343.56, Stats., when the evidence establishes that the defendant did falsely make "any accountable receipt for money . . . with intent to injure or defraud,"—it is not necessary to also prove that there was a simulation or forgery of some person's handwriting. Such withdrawal slips as are involved herein are not intended to be presented for payment as in the case of a check, bill of exchange, or similar instrument, but are obviously intended to serve primarily as evi-

dence of the receipt of money withdrawn by a depositor, upon an audit or examination of the bank's transactions. When there are in its files instruments purporting to be withdrawal receipts for money which in fact was not withdrawn by the depositor or with his authority, such receipts as are not genuine may serve to deceive the auditors and examiners. At all times in question in this case there should have been a balance, and the bank's books and files should have shown that Buchholz had on deposit a balance of $1,125, instead of only $725 as appeared in his account on the bank's books and its file of withdrawal receipts, by reason of the unauthorized withdrawal receipts and book entries made by defendant.

The state contends the jury was warranted in finding that defendant did falsely make the withdrawal slip on August 10th, with the intent to injure and defraud, because of the following facts and circumstances which the jury could consider established beyond a reasonable doubt by the above-stated evidence, to wit: On July 23, 1945, Arndt withdrew, without Buchholz's authority or knowledge, $400 from his savings account and signed Buchholz's name to the withdrawal slip dated July 23, 1945. Although Arndt claims he put the $400 into an envelope and marked it as the payment for Buchholz's subscription and put the envelope in the safe to hold and apply the money when the stock should be issued, Arndt did not inform Buchholz of these transactions, and the latter without having knowledge thereof on August 6, 1945, then gave his check payable to the bank for $400 to pay for his stock subscription. On that date this check was charged to Buchholz's checking account but Arndt entered the credit of $400 in Buchholz's savings account without Arndt informing Buchholz thereof or delivering a certificate for the stock to him. By thus crediting the $400 to Buchholz's savings account, there was restored his rightful balance of $1,125 and the unauthorized withdrawal of $400 on July 23d was in effect canceled in so far as the savings account was concerned; and

if, as Arndt claims, he then left an envelope with $400 in the bank to apply in payment of the stock, there was no loss attributable to fraud thus far. However, on August 10, 1945, Arndt, without authority from Buchholz or his knowledge, or then informing him thereof, falsely made the second withdrawal slip for $400, signed with the name of Buchholz; and from Buchholz's savings account the withdrawal of $400 on this slip was entered by Arndt in that account on the bank's books. This slip is an accountable receipt for money and it is on the falsely making of this slip and Arndt's withdrawal of $400, pursuant thereto with intent to injure and defraud that the state bases its contention that the jury's conviction of Arndt under sec. 343.56, Stats., was warranted by the evidence. In relation to the withdrawal of $400 on August 10th and the deposit thereof, there are conflicts and some confusion (as stated above) in statements made by Arndt before the trial and also in his testimony, but the jury were warranted in believing the facts to be as he finally testified on the trial, that he put through the $400 withdrawal ticket (of August 10th) to offset the $400 he had previously withdrawn; that he put the August 10th withdrawal of $400 in his own pocket to take care of the deposit he had made of $400; that—it was his own money; he left it in the bank files; he intended to give it back to Buchholz; he took it out of the bank and carried it around possibly a day. There does not appear to have been any purpose or reason for the withdrawal slip on August 10th, if the $400 were then still in an envelope in the bank, excepting that Arndt made it for the purpose of withdrawing $400 and converting it or the first withdrawal of $400 to his own use. By the defendant's claim he then had $400 of Buchholz's money with which to pay the $400, which the latter was to pay for the stock upon delivery. The second withdrawal cannot be explained as due to defendant's forgetfulness. It was made only four days after the application of Buchholz's check to offset the unauthorized first withdrawal by defendant. Those facts and circumstances could be considered sufficient to war-

rant finding that Arndt made the August 10th withdrawal slip with intent to injure or defraud. But in addition there are in support of such findings also the following facts and circumstances which can be deemed to have been proven by credible evidence.

Until after the bank examiners commenced examining the bank's books on November 13, 1945, Arndt never disclosed to Buchholz and the latter had no knowledge of the two withdrawals from his savings account by Arndt. He came to see Buchholz on November 14th, and told him that $400 had been withdrawn from his savings account to pay for his stock; that Arndt forgot to put it back, but had the money and would return it to the account after the examination; and Arndt asked for Buchholz's savings passbook for the purpose of entering the transaction and returned it about ten minutes after entering the withdrawals under date of July 23d and August 10th and the one deposit dated August 6th. After Arndt resigned as cashier on November 15th he handed the $400 in currency to Buchholz on November 17th without any explanation. Thus from the time of Arndt's second withdrawal of $400 on August 10th and as the result thereof Buchholz's savings account as kept on the books of the bank was short $400; and Buchholz was never informed of this fact nor of Arndt's claim that the $400 were in a sealed envelope kept in the bank by Arndt until he, on November 14th,—after the commencement of the examination by the examiner,—informed Buchholz of such withdrawal and disposition of the money and asked Buchholz for his passbook in order to enter the withdrawal. In view of the proof establishing those facts and circumstances and others of similar import, in connection with the confused and contradictory testimony of the defendant himself, it is evident that the trial court was well warranted in stating (in imposing sentence) :

"I am convinced without any question, and beyond any doubt, that this man did take that money he was so administering, by the statements which he made in the first instance and

the evidence which he gave upon the trial, that I am quite convinced that regardless whether he did leave it in the bank, that that part of his testimony with respect to taking an envelope and placing therein the sum of $400 to the account of Mr. Buchholz, was a complete fabrication which impressed me that when his operation of the bank was interrupted by the appearance of the examiner unexpectedly that he became conscious of his situation, that he merely hurried about and got the money from some source or another, to make good his default."

The fact that Arndt did not simulate Buchholz's signature does not compel finding that defendant did not make the withdrawal receipt with intent to injure or defraud either Buchholz or the bank. As this court said in *Schmidt v. State,* 169 Wis. 575, 578, 173 N. W. 638,—

"The question of a man's intent is generally to be determined by considering his acts and the surrounding circumstances and drawing the conclusion as to his state of mind therefrom. The fact that no attempt was made to counterfeit Junkerman's signature is to be considered, but cannot be held to be conclusive. If there was an intent to injure or defraud any person, either Junkerman, the bank, or the person to whom the false check was given, it is sufficient. Secs. 4454, 4455, Stats."

Defendant also contends there was reversible error by reason of the italicized words in the following testimony by the bank examiner in answer to two questions, viz.:

(1) (Question by district attorney) "What was the nature of your investigation?" Answer: "The irregularities were discovered in his account *as well as others* [referring to Buchholz's account]."

(2) (Question by defendant's counsel) "What you are trying to do is to impound $400 so as to make it look as though this man was $400 short, are you?" Answer: "No, sir, not only is the $400 impounded, *there is other money impounded on the same basis.*"

Defendant claims the witness clearly indicated to the jury by the italicized words in the first answer that there were ir-

regularities in the accounts of other persons in addition to the one for which the defendant was being prosecuted, and likewise indicated by the italicized words in the second answer that there were other moneys of the defendant which were irregularly handled; and that by reason of the matters thus indicated the testimony was highly prejudicial and constituted reversible error. Defendant's contention cannot be sustained. Neither of the portions of the answers which defendant claims were prejudicial were in response to any inquiry by the district attorney or defendant's attorney. The objectionable words were volunteered by the witness and in each instance the court immediately ordered the answers stricken and instructed the jury to disregard the testimony. Moreover it is not stated or indicated in either of such portions of the answers that there was any misconduct or improper transaction on the part of the defendant in respect to such other irregularities or impounded moneys. Under the circumstances there was no error on the part of the court or counsel, and the witness' error in so testifying did not constitute reversible error. *People v. Rosewicz,* 228 Mich. 231, 199 N. W. 632.

*By the Court.*—Judgment affirmed.

FAIRCHILD, J. ·(*dissenting*). In disagreeing with the majority I do not propose to urge that, using very general terms, substantial justice may not have resulted from the proceedings under consideration in spite of the fact that I consider serious error has occurred.

There did come into the case suggestions of other acts which had no bearing upon and certainly were not material matters to be considered by the jury in passing upon the charge of forgery of an "accountable receipt." My dissent relates to the use of the charge of forgery when the offense committed, if any, consisted of making false entries in the records of the bank. Had that been the charge the effect of the suggestions of irregularity in bank matters which crept into the trial would not impress me so decidedly as being unfair as they do when

considered with the particular charge of forgery then pending against the defendant. It seems to me that while the charge is forgery the evidence is concerning the violation of either sec. 221.17, Stats., with relation to false entries, or sec. 221.39, treating with embezzlement in abstracting money for which the bank is responsible.

"Accountable receipt" has always been distinguished from the ordinary or usual receipt which is not conclusive between the immediate parties. *People v. Bradley,* 4 Parker Crim. Rep. (N. Y.) 246; *State v. Ribbe,* 27 Minn. 315, 7 N. W. 262. Our own statute, sec. 343.56, puts the accountable receipt in a particular category. The clause reads, "or any accountable receipt for money, goods or other property."

The statute describing forgery was not to apply to an act of writing a name in a memorandum with one hand and then holding it in the other. The defendant here represented the banking institution, the records of which should properly be under consideration. The paper to which the defendant affixed the name of Buchholz does not become by anything that has happened an "accountable receipt for money or goods delivered." It may be, as the evidence seems to indicate, that a false entry was made for and on the bank's record. However, the acts underlying this case would as logically maintain a charge of embezzlement or larceny as bailee, if we must find an individual who is to be injured or defrauded instead of the bank.

By importing other crimes into the general law regulating the keeping of bank records by bank officials, confusion will necessarily result. If we adhere to the present ruling there will be several rules nearly approaching the act of distinct and opposite meaning, and designed to regulate conduct under very different circumstances. And technical objections as well as real ones will contribute uncertainty.

Had the defendant been charged with the failure to keep the law under the banking sections the difficulties and transgressions, if any, would be more readily reached.

I am authorized to state that Mr. Justice BARLOW joins in this dissent.

RECTOR, J., took no part.