STATE, Respondent, v. ERICKSON, Appellant. [Case No. State 172.]

STATE, Respondent, v. STODOLA, Appellant. [Case No. State 173.]

*Nos. State 172, 173. Argued May 3, 1972.—Decided June 6, 1972.*
(Also reported in 197 N. W. 2d 729.)

For the appellants there was a brief and oral argument by *Robert Zum Brunnen* of Spooner.

For the respondent the cause was argued by *Richard J. Boyd,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

ROBERT W. HANSEN, J.   Is a fisherman, casting his plug or flies over the weedbeds of a lake, really fishing at all until a bass or pike rises to take his bait?  Is a hunter, sitting in his duckblind for hours, shotgun at his side, really hunting at all until a mallard or bluebill flies within range?  Were these rifle-equipped deer hunters, flashing their spotlight back and forth across fields and forest, really "shining deer" until a whitetail moved within range of their spotlight and rifles?

Most fishermen and hunters, we suspect, returning empty-handed from a day on the lake or in the blinds or out in deer country, figure they have gone fishing or been hunting.  Their spouses may have some doubts when there is nothing to show for the day's endeavors.  Appel-

lants are certain, it appears, that fishing requires encountering one of the finny tribe—that duck hunting requires having a duck fly within gunshot range—that "shining deer" requires meeting up with a deer.

However, the question before us is not to be answered in terms of popular conceptions or misconceptions as to whether success must reward effort to complete the process of fishing, hunting or "shining." We deal with a conviction, in fact, two, of violation of a particular provision of the state administrative code. It is the wording of the particular section involved that controls. The section reads:

"NR 10.10 **Deer and bear hunting.** (1) No person while hunting or in possession of firearms or bow and arrow shall have in possession or under control any light used for the purpose of shining deer."

This code provision requires for conviction just two things: (1) That the person charged be hunting or in possession of firearms or bow and arrow; and (2) that he also have in possession or under control any light used for the purpose of shining deer.

The testimony upon which the jury here found the defendants guilty was primarily that of a state conservation officer. His testimony was that:

. . . he was patrolling an area that "always has lots of deer," and parked his car on a county line road.

. . . he observed an auto being driven at a high rate of speed.

. . . he observed the car make a left turn and proceed until it came to a field.

. . . he observed a spotlight turned on from the driver's side of the car, its beams shining back and forth across the field.

. . . he observed the auto take off, again at a high rate of speed, turn south until it came to another field.

. . . he observed the spotlight once again being turned on and flashed back and forth across the field.

. . . he followed when the car left the second field, turning on his red light and siren.

. . . he stopped the car, which defendant Marvin Erickson was driving, and in which defendant Dean Stodola was a passenger in the rear seat.

. . . he observed that the rear window behind the driver's seat was rolled down.

. . . he observed a rifle case, covered with clothing, in the rear seat. (In the rifle case was a 308-caliber Remington rifle.)

. . . he removed two 308-caliber bullets from the passenger's front pocket.

. . . he found an empty 308-caliber casing, a 22-caliber pistol, 22-caliber ammunition, a knife and a spotlight on the floor of the car. (The spotlight was plugged into the cigarette lighter on the dashboard.)

. . . he informed the defendants of their rights, and asked them what they were doing. He testified that the driver, defendant Erickson, answered that they were looking for deer.

Clearly, the presence of rifle, pistol and ammunition, all of which were introduced into evidence, established that the defendants were "in possession of firearms."

As clearly, the presence of the spotlight, plugged into the car's cigarette lighter, established that the defendants were "in possession or [had] under control [a] light."

The sole question, as we see it, is whether the proof established that the firearms-equipped defendants were using their spotlight "for the purpose of shining deer."

"Purpose" has been defined as "end," "intention," or "object." (Black's, *Law Dictionary* (4th ed.), page 1400.) The code reference to "used for the purpose of shining deer," is to the use of the light with the intent to shine deer. The question of a person's intent or pur-

pose is generally to be determined, this court has said, ". . . by considering his acts and the surrounding circumstances and drawing the conclusion as to his state of mind therefrom. . . ." (*Schmidt v. State* (1919), 169 Wis. 575, 578, 173 N. W. 638.)

Here the conclusion is inescapable, based on the acts of the defendants and the surrounding circumstances, that the defendants were flashing their spotlight across the fields with the intent and for the purpose of locating deer by shining the light upon them. If there remained any uncertainty as to their purpose and intent, it is removed by the statement of the defendant-driver of the car that they were "looking for deer." All requirements of the law being established by the evidence, they were properly found guilty of violating sec. NR 10.10 (1) of the code.

In denying defendants' motion for a new trial, the trial judge commented, ". . . it is the court's opinion that everyone in this north country knows what we mean when we talk about shining deer. It is directing a light into woods or fields where deer are likely to be. This is not illegal unless one has a firearm with him at the same time, which defendants did." Defendants argue that the judge thus took judicial notice of a local, nonstatutory definition of the offense charged. It is what the law or code prescribes that establishes what is required for conviction, not what people in a locality may think is involved. But where their understanding is exactly what the law provides, no harm is done or change made by noting their understanding of the law. In upholding the jury verdict, the trial court did no more than apply the code exactly as it is written to the facts exactly as they were established. It could not do less, and the result was and is a conviction which must be affirmed on appeal.

*By the Court.*—Judgment affirmed.