**STATE of Maine**

v.

**Grover B. BRAGG.**

Supreme Judicial Court of Maine.

April 2, 1975.

**508**

John H. Fallon, County Atty., Searsport, Thomas A. Berry, Asst. Atty. Gen., Augusta, for plaintiff.

Silsby, Silsby & Walker by William S. Silsby, Jr., Ellsworth, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WEATHERBEE, Justice.

A Waldo County jury convicted the Defendant of the offense of hunting wild animals in the nighttime (12 M.R.S.A. § 2455) after hearing testimony indicating his guilt, which may be summarized in this manner:

At about 9:45 p. m. on October 15, 1973, two game wardens were stationed opposite a field which they knew had been frequented by deer. They observed a pickup truck with two occupants pass the field and then, approximately a minute later, what appeared to be the same truck appeared from the opposite direction and passed the field again, this time with a spot light illuminating the field from the passenger's side of the cab. The vehicle stopped and the wardens heard the sound of a rifle shot from the immediate vicinity of the vehicle. The light went out and in 10 or 15 seconds the vehicle drove on. The officers intercepted and stopped the vehicle with Warden Thomas' cruiser in about 100 yards. They found the Defendant alone in the truck. There was no gun in the truck but the window on the passenger's side was rolled down, a spot light which was lying on the front seat proved to be operable when the warden plugged its cord into the dashboard cigarette lighter, and ten .270 rifle shells and a partial box of .30–30 rifle shells were lying on the dash. One officer seized the light and shells—the introduction into evidence of which will become the sole issue in Defendant's appeal—while the other warden went immediately to the field. He found there a warm dead deer with a bullet wound in the chest from which uncongealed blood still oozed.

The Defendant, understandably, makes no claim that the evidence presented was insufficient to support his conviction. However, his counsel properly preserved

for review his claim that the presiding Justice erroneously permitted to go before the jury the spotlight and rifle shells. M.R. Crim.P., Rule 37(a).

It is the Defendant's contention that no sufficient foundation was laid for the admission of these exhibits in the presence of the jury and that this operated to the Defendant's prejudice, and that the exhibits were not admitted into evidence *in the presence of the jury.*

The issue presented by the Defendant's appeal developed in this manner:

Both wardens testified. The first, Warden Thomas, described stopping the truck and finding the Defendant in the driver's seat with the spotlight beside him. He said he then went back to the field where he found the dead deer, leaving the Defendant with Warden Grant (who arrested him for the offense of illuminating a field. 12 M.R.S.A. § 2465).

At this point the Assistant Attorney General, in an abundance of caution, informed the Court and defense counsel at sidebar that the State was about to offer the spotlight and shells which might involve potential problems of continuity and exclusive control so "if Defense counsel should like to voir dire rather than start it in front of the jury, I would just as soon have the jury excused." Defense counsel made no comment and the Justice excused the jury.

Warden Thomas then went on to say that when he returned to his cruiser and the truck after finding the deer he saw Warden Grant take the spotlight and rifle cartridges from the truck and put them in Warden Thomas' cruiser. At this time, Warden Thomas placed the Defendant under arrest for the offense of night hunting. He said he placed indentifying tags on the spotlight and took it to his office. He said the house is always locked when the family is not at home and that the light had not been altered, to his knowledge. The Jus-

tice then said "Let's bring the jury back in and go through this all over again."

Defense counsel inquired (still in the absence of the jury) if the State was offering the exhibit "at this time". The State's attorney answered that he was not. Defene counsel said "I understand but I don't see the purpose of the jury hearing this."

In the jury's absence, testimony continued, including Warden Thomas' description of finding the cartridges in his cruiser and of his tagging and keeping them in the same manner as he did the spotlight.

Warden Grant then took the stand in the jury's absence. He testified that when Warden Thomas returned to the truck from the field he, Warden Grant, removed the exhibits from the truck and placed them in Warden Thomas' cruiser, which was positioned directly in front of the truck.

All the exhibits were then offered and admitted in the jury's absence. The Defendant made no objection based upon the jury's absence.

The trial then continued before the jury. Warden Thomas told of finding the deer, of seeing the light and cartridges in the pickup truck, of Warden Grant putting these articles in the cruiser, and of his keeping them in the closet at his home. Warden Grant then described taking the spotlight and rifle cartridges from the pickup truck and placing them in Warden Thomas' cruiser.

After Warden Thomas had described in the jury's presence the circumstances in which the spotlight and rifle cartridges were taken from the pickup truck and kept by him as evidence, the record shows the State's attorney asked, "And—these have been admitted, your Honor, is that correct?" According to the record, the Justice "nodded".

With this background in mind, we turn to the Defendant's contention that the

spotlight and rifle cartridges were improperly permitted to go before the jury as exhibits. The Defendant says testimony given while the jury is not present concerning proposed exhibits cannot furnish a basis for the admission of the objects as exhibits; that sufficient evidence was not presented by the State in the jury's presence to properly identify the objects, establish a reliable chain of custody and to give assurance that the objects are not now in altered form; that objects which have not been formally *offered and admitted* in the jury's presence cannot gain the status of exhibits; that these objects were not offered and admitted in the jury's presence.

 It is the responsibility of the presiding Justice to determine the admissibility of both testimonial and physical evidence. Winslow v. Bailey, 16 Me. 319 (1839); State v. Warren, Me., 312 A.2d 535 (1973); 24 Me.L.Rev. 281 Preliminary Questions of Fact: Respective Roles of Judge and Jury in Maine Courts (1972). In some instances it may be advisable for the Justice to hear evidence relating to admissibility in the jury's absence in order to avoid exposing the jury to facts which the Justice may ultimately decide they should not hear.

Such a procedure was followed in this case, without objection by the Defendant. The exhibits were then offered by the State and the Justice formally admitted them. The Defendant does not argue that a sufficient foundation for their admission had not been laid.

We know of no reason why the Justice cannot carry out this part of his trial responsibility in the jury's absence. The period during which the testimony on admissibility of these exhibits was received by the Justice was part of the trial, although the jury was absent. The Defendant and his counsel were present and counsel had full opportunity for cross-examination and objection and counsel availed himself of both. There was no necessity for the jury to hear the Justice make his ruling. The exhibits were properly admitted.

The Defendant contends that the State was then required to establish fully the admissibility of the exhibits again in the presence of the jury. While this contention does not correctly state the rule, it seems axiomatic that for exhibits to be considered by the jurors as bearing on a defendant's guilt or innocence, the jurors must have heard sufficient testimony concerning their identity and their relation to the facts of the case in order for them to safely evaluate the probative value of the exhibits. In a given case, it could be the duty of a Justice to withhold the exhibits from the jury's consideration, upon motion, if the jury had been so insufficiently informed as to the exhibits' connection with the facts of the case that the jurors could only speculate as to their identity and relevancy.

No such situation prevailed here when the jurors took the exhibits into the jury room to begin their deliberations.

The entry will be:

Appeal denied.

All Justices concurring.