**STATE of South Dakota, Plaintiff and Appellant,**

v.

**Ed MORRISON, Ralph Fiedler, and Steve Kerns, Defendants and Appellees.**

No. 14208.

Supreme Court of South Dakota.

Considered on Briefs Oct. 26, 1983.

Decided Dec. 21, 1983.

Mikal G. Hanson, Asst. Atty. Gen., Pierre, for plaintiff and appellant; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Gary G. Colbath of Banks & Johnson, P.C., Rapid City, for defendants and appellees.

HENDERSON, Justice.

## PROCEDURAL HISTORY

On November 20, 1982, appellees Morrison, Fiedler, and Kerns were charged with violating SDCL 41–8–17 by illegally hunting with a spotlight. A preliminary hearing ensued on February 14, 1983. Appellees filed Motions to Dismiss on April 6, 1983. The circuit court granted appellees' motions and filed a memorandum decision on April 14, 1983. Essentially, the circuit court found SDCL 41–8–17 void because it appeared to prohibit conduct generally con-

sidered to be constitutionally protected. Appellant filed its notice of appeal on May 11, 1983. We reverse.

## FACTS

Conservation Officer Muck was on routine patrol near the divide of the Cheyenne and Bad Rivers in Haakon County, South Dakota, on November 20, 1982. This is broad, expansive country. He observed a spotlight flashing in the air from some distance away and proceeded to investigate. Ultimately, he parked his vehicle to gain a vantage point. A vehicle, with a spotlight being used, traveled approximately an 8-mile circle around his position. Eventually, Officer Muck came upon a pickup truck occupied by appellees. A spotlight beam emanated from the pickup truck illuminating some farm buildings and the surrounding area. Officer Muck stopped the pickup truck observing therein a loaded Remington 700 centerfire rifle, a loaded twelve-gauge shotgun, a loaded .22 caliber rifle, and a Q-beam spotlight which was warm to the touch. Officer Muck confiscated the spotlight and arrested appellees. Wild game was not found in appellees' possession.

## ISSUE

IS SDCL 41–8–17, THE SPOTLIGHTING STATUTE, UNCONSTITUTIONALLY VAGUE AND/OR OVERBROAD?

## DECISION

SDCL 41–8–17 * provides:

It is unlawful for any person, or one or more of a group of persons, together, to throw or cast the rays of a spotlight, headlight or other artificial light on any highway, or in any field, pasture, woodland, forest or prairie, for the purpose of spotting, locating or taking or attempting to take or hunt any animal while having in possession or control any firearm, bow or other implement whereby

---

* Prior to 1982, SDCL 41–8–17 was limited to "big game animals." *See State v. Morrison,* 337 N.W.2d 825 (S.D.1983).

any game could be killed. However, outside of the Black Hills fire protection district:

(1) A person may use a hand held light while on foot, to take raccoons after they have been treed by dogs; and

(2) A landowner or occupant may use an artificial light on his or her land, with a shotgun using shot shells only or a firearm using a .22 caliber rimfire cartridge, in the taking of rabbits, hares, coyotes, foxes, raccoons, opossums, badgers, skunks or rodents.

A violation of this section is a Class 1 misdemeanor. The provisions of this section do not apply to a law enforcement officer in the performance of his duty.

Appellees assert the "any animal" and the "possession or control" language of SDCL 41–8–17 are unconstitutionally overbroad and vague. The trial court's memorandum decision found fault with the "any animal" language by using the hypothetical "that a rancher using vehicle headlights to find a cow at a time when he had a rifle in his vehicle would be violating the statute." From the record before us, these do not appear to be the facts, nor is this a reasonable interpretation of this statute.

■ As we have recently held: "We start from the premise that enactments of the legislature will be upheld unless they are clearly and unmistakenly unconstitutional." *In re T.F.*, 339 N.W.2d 124, 125 (S.D.1983). *See also, State v. Crelly*, 313 N.W.2d 455 (S.D.1981). From this basis, we look to a contemporaneous holding of the United States Supreme Court on vagueness: "As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, — U.S. —, —, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903, 909 (1983). A related, but conceptually distinct, doctrine is overbreadth. "When a statute not only forbids conduct constitutionally subject to proscription, but also

sweeps within its ambit those actions ordinarily deemed to be constitutionally protected, it is considered overbroad." *State v. Vogel*, 315 N.W.2d 324, 327 (S.D.1982).

■ Protection of game animals is clearly within a state's police power. *Baldwin v. Fish & Game Comm'n of Montana*, 436 U.S. 371, 391, 98 S.Ct. 1852, 1864, 56 L.Ed.2d 354, 370 (1978). Appellees have failed to assert SDCL 41–8–17 affects their First Amendment liberties. Likewise, we are unable to discern any possible arbitrary First Amendment suppression inherent in SDCL 41–8–17. *See also, State v. Saurman*, 64 Ohio St.2d 137, 413 N.E.2d 1197 (1980) (wherein the Court held Ohio's spotlighting statute failed to impinge upon First Amendment rights). Therefore, both our void-for-vagueness and overbreadth reviews must be confined to the facts of this case rather than "every other possible scenario which might be applied." *In re P.B.*, 339 N.W.2d 121, 123 (S.D.1983) (quoting *Vogel*, 315 N.W.2d at 326). In our review of the sparse record, we have failed to unearth any evidence or affirmation that appellees were ranchers looking for their livestock. At trial, all facts may be more fully developed.

■ Convictions for spotlighting or using artificial hunting lights have been upheld under statutes employing varying language to describe the protected species. *See State v. Hocker*, 201 N.W.2d 74 (Iowa 1972) ("any animal"); *People v. Kreienheder*, 21 Ill.Dec. 425, 64 Ill.App.3d 598, 381 N.E.2d 752 (1978) ("any wild birds or mammals"); *State v. Fonseca*, 378 So.2d 389 (La.1979) ("Hunt with firearms of any type . . . after one-half hour after official sunset and before one-half hour before official sunrise"); *State v. Hillock*, 384 A.2d 437 (Me.1978) ("wild animals"); *State v. Suess*, 236 Minn. 174, 52 N.W.2d 409 (1952) ("any wild animal"); *State v. One Oldsmobile Two-Door Sedan*, 227 Minn. 280, 35 N.W.2d 525 (1948) ("any wild animal"); *State v. Barber*, 91 N.M. 764, 581 P.2d 27 (1978) ("big game or domestic livestock"); *Saurman*, 413 N.E.2d at 1199 (shall not cast rays of spotlight while having in pos-

session a hunting device or cast rays of spotlight to locate a wild animal); *State v. Ledford,* 47 Or.App. 1109, 615 P.2d 1161 (1980) ("wildlife"); and *State v. Erickson,* 55 Wis.2d 150, 197 N.W.2d 729 (1972) ("shining deer"). *See also, Chastang v. State,* 366 So.2d 367 (Ala.Cr.App.1979); *State v. Souder,* Ind.Ct.App., 444 N.E.2d 891 (1983); and *State v. Bragg,* 334 A.2d 507 (Me.1975).

In *State v. Halverson,* 261 Iowa 530, 155 N.W.2d 177 (1967), the Iowa Supreme Court upheld the constitutionality of Iowa's spotlighting statute which, like South Dakota's, reads "any animal." This is entirely logical since spotlighting has a devastating effect on a broader class of game animals than "big game." Appellees would have us illuminate the "any animal" language of SDCL 41–8–17, while blacking out the "whereby any game could be killed" language of the same sentence. We are unwilling to read SDCL 41–8–17 in such light. We hold that the "any animal" language means "any game animal."

Ordinary people can understand that SDCL 41–8–17 proscribes spotlighting game animals while possessing weapons capable of killing game animals. Armed game spotlighters differ significantly from innocent ranchers who happen to have a firearm in their vehicle while searching for their livestock. Game spotlighters know precisely what damage they intend. As the Minnesota Supreme Court held: "Persons engaged in such nefarious acts do not need the advice of a lawyer to inform them that they are breaking the law. Any one desiring to remain safely outside the area of the proscribed conduct can easily do so ...." *Suess,* 236 Minn. at 183, 52 N.W.2d at 415.

Finally, we have reviewed appellees' argument that they failed to have possession or control of the three loaded firearms removed from the pickup truck, and we find it without merit.

Reversed.

All the Justices concur.