THE STATE OF OHIO, DIVISION OF WILDLIFE, APPELLANT, *v.*
BARKER ET AL., APPELLEES.

[Cite as State *v.* Barker (1983), 8 Ohio St. 3d 39.]

(No. 82-1696—Decided December 21, 1983.)

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, *Ms. Eleanor J. Tschugunov,* assistant attorney general, and *Mr. I. Carson Crow,* assistant prosecuting attorney, for appellant.

*Messrs. Story & Story* and *Mr. Steven L. Story,* for appellees.

LOCHER, J.

I

Two issues are before this court for review. The first is whether R.C. 1531.20, construed *in pari materia* with R.C. 1533.161, contemplates the forfeiture of an automobile under the general language of "or other device." We hold it does. The second issue is whether such forfeiture complies with the constraints of due process under the state and federal Constitutions. We hold the forfeiture to be in compliance with due process of law.

This is a case of statutory interpretation. The parties concede that R.C. 1531.20[1] and 1533.161[2] must be construed *in pari materia.* The locus of contention is the terminology in R.C. 1531.20 which allows for the forfeiture of "[a]ny boat, net, seine, trap, ferret, gun, *or other device* used in the unlawful taking of wild animals * * *." (Emphasis added.) More specifically, the concern herein is whether the phrase "or other device" includes motor vehicles.

---

[1] R.C. 1531.20 provides:

"Any boat, net, seine, trap, ferret, gun, or other device used in the unlawful taking of wild animals is a public nuisance. Each game protector, or other officer with like authority, shall seize and safely keep such property and the illegal results of the use thereof, and unless otherwise ordered by the chief of the division of wildlife shall institute, within five days, proceedings in a proper court of the county for its forfeiture. A writ of replevin shall not lie to take such property from his custody or from the custody or jurisdiction of the court in which such proceeding is instituted, nor shall such proceeding affect a criminal prosecution for the unlawful use or possession of such property.

"An action for the forfeiture of any such property shall be commenced by the filing of an affidavit describing the property seized and stating the unlawful use made of it, the time and place of seizure, and the name of the person owning or using it at the time of seizure. If the name is unknown such fact shall be stated. Upon the filing of the affidavit, the court shall issue a summons setting forth the facts stated in the affidavit and fixing a time and place for the hearing of the complaint. A copy of the summons shall be served on the owner or person using the property at the time of its seizure, if he is known, or by leaving a copy thereof at his usual residence or place of business in the county, at least three days before the time fixed for the hearing of the complaint. If the owner or user is unknown or a nonresident of the county or cannot be found therein, a copy of the summons shall be posted at a suitable place nearest the place of seizure, but if his address is known a copy of the summons shall be mailed to him at least three days before the time fixed for the hearing of the complaint. On the date fixed for the hearing the officer making such service shall make a return of the time and manner of making the service. Upon the proper cause shown, the court may postpone the hearing.

"If the owner or person unlawfully using such property at the time of its seizure is arrested, pleads guilty, and confesses that the property at the time of its seizure was being used by him in violation of law or order of the division of wildlife, no proceeding of forfeiture shall be instituted, but the court in imposing sentence shall order the property so seized forfeited to the state, to be disposed of thereafter as the chief directs."

[2] R.C. 1533.161 has been passed upon by this court and has been held constitutional. *State* v. *Saurman* (1980), 64 Ohio St. 2d 137 [18 O.O.3d 367]. The term "any vehicle" is an integral part of the jacklighting offense:

"No person shall throw or cast the rays of a spotlight or other artificial light from *any vehicle* into any field, woodland or forest, while having in his possession a hunting device, or throw or cast the rays of a spotlight or other artificial light from *any vehicle* into any field, woodland, or forest for the purpose of locating a wild animal. * * *" (Emphasis added.)

The court of appeals below interpreted the "or other device" language through the doctrine of *ejusdem generis*.[3] While the use of the doctrine was correct, the result was incorrect. The classifications of "net, seine, trap, ferret, [and] gun" are not relevant to motor vehicles. The classification of "boat" is, however, determinative[4] within the narrow context of R.C. 1533.161. A boat, unlike a net, seine, trap, ferret or gun, is a means of transporting both hunter and hunted. A boat facilitates the capture of the animal and, in many instances, makes possible the activity barred by statute. Most importantly, forfeiture of a boat represents a substantial deterrent to the reoccurrence of the proscribed activity.

Similarly an automobile, under R.C. 1533.161, not only is a means of transporting both hunter and hunted, but also makes the activity barred by statute possible. Thus, such forfeiture is entirely consistent with the rationale of deterrence. Of particular importance in our analysis is the use of the term "any vehicle" as an integral part of the proscribed offense. In reviewing the statute, the offense *cannot* be committed unless the light is *"throw[n] or cast"* from *"any vehicle."*

---

[3] *Ejusdem generis* is a canon of statutory construction meaning literally, "[o]f the same kind, class, or nature. In the construction of laws, wills, and other instruments, the *'ejusdem generis* rule' is, that when general words follow an enumeration of person or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned. * * * [Citation omitted.] The rule, however, does not necessarily require that the general provision be limited in its scope to the identical things specifically named. Nor does it apply when the context manifests a contrary intention." Black's Law Dictionary (5 Ed. 1979). See, generally, 2A Sutherland, Statutes and Statutory Construction (4 Ed. 1973) 103, Section 47.17.

In *State* v. *Hooper* (1979), 57 Ohio St. 2d 87 [11 O.O.3d 250], Justice William B. Brown articulated the analysis for statutory interpretation when a court is confronted by ambiguous statutory language listing specific terms followed by a catchall term such as "other." In such instances the canon of *ejusdem generis,* while useful, is merely one means of effectuating judicial interpretation of the legislative will. See *Henry* v. *Central Natl. Bank* (1968), 16 Ohio St. 2d 16 [45 O.O. 262], paragraph two of the syllabus.

[4] The court of appeals below, in determining whether "boat" was representative of a significant class in which a motor vehicle might fit, turned to the statutory precursor of R.C. 1531.20, G.C. 1450. Under G.C. 1450, a 1938 Ohio Attorney General Opinion, No. 2741, specifically rejected expansion of "other device" to include a motor vehicle. G.C. 1450 did not, however, include the terms "boat" and "ferret." The court of appeals subsequently drew the erroneous inference that the legislature's intent was clearly not to include motor vehicles. Similarly, appellees argue that the legislature twice had an opportunity to amend R.C. 1531.20 to include motor vehicles and both times declined to do so. See H.B. No. 1039 and Am. H.B. No. 1039 of the 112th General Assembly, and H.B. No. 23 of the 113th General Assembly. Both arguments, while superficially convincing, beg the problem of interpreting the present statute *as it is written today.* See, also, *Oliver* v. *Kaiser Community Health Found.* (1983), 5 Ohio St. 3d 111. ("Legislative inaction is a weak reed upon which to lean in determining legislative intent." *Id.* at 115.) By the same token, an Attorney General opinion based on a form of the statute not including the term "boat" is not helpful in the instant inquiry. We find both arguments unconvincing.

The legislature has made no distinction between the owner and the user of a device subject to forfeit. A boat, a gun, or ferret, if used illegally under R.C. 1531.20, may be forfeited. A similar result is presupposed in respect to an "other device." Within the confines of the jacklighting statute, an automobile is an "other device." Thus, it too is forfeited if used for an illegal purpose.

Barker had already been warned of a potential forfeiture (this is the second time he has been caught violating the jacklighting statute). He had been warned of possible forfeiture proceedings if he were to be caught again. Further, it is evident from the trial court proceedings that the automobile had a greater role in the proscribed activity than merely providing transportation. Because the issue is not before us we decline to address the question of what would happen had the car been stolen, nor will we discuss appellee Joe Holland Chevrolet, Inc.'s potential remedies against appellee Barker for his unauthorized use of the car.

Accordingly, we hold a motor vehicle is an "other device" within the meaning of R.C. 1531.20 when construed *in pari materia* with R.C. 1533.161.

## II

The second issue is whether a forfeiture as described violates due process of law. The appellate court's determination that forfeiture of property cannot be effected because the property was used for criminal purposes without the owner's knowledge and consent is incorrect.

The leading Ohio case on the question of forfeiture is *Lindsay* v. *Cincinnati* (1961), 172 Ohio St. 137 [15 O.O.2d 278], which holds:

"A municipal ordinance, which provides for the seizure and forfeiture of an automobile which has been illegally used in violation of an ordinance of the municipality, is within the police power of the municipality and is constitutional, even though the owner of the automobile had no knowledge of the illegal use by the driver and did not lend the automobile to be used for any illegal purpose."

Appellees seek to distinguish *Lindsay* by suggesting the forfeiture in the case at bar lacks specific statutory authorization. Since we have made a contrary determination, *Lindsay* is both relevant and controlling. Having found a "motor vehicle" to be an "other device," pursuant to R.C. 1531.20, the forfeiture complies with due process as a valid legislative exercise of state police powers. *State* v. *Lilliock* (1982), 70 Ohio St. 2d 23 [24 O.O.3d 64]. ("* * * In order for a property disposition statute to be constitutional in its application it must be rationally related to a legitimate state concern, such as deterring criminal activity." *Id.* at 28.) Accordingly, we find no merit in appellees' argument that forfeiture of a motor vehicle violates due process of law under the Ohio Constitution.

Similarly, the United States Supreme Court held in *Calero-Toledo* v. *Pearson Yacht Leasing Co.* (1974), 416 U.S. 663, that a statutory forfeiture scheme is not rendered unconstitutional simply because the owner of the

seized property is innocent. *Id.* at 683. Justice Brennan, in the majority opinion, cited *Van Oster* v. *Kansas* (1926), 272 U.S. 465, for the proposition that state lawmakers "in the exercise of the police power, were free to determine that certain uses of property were undesirable * * *." *Calero-Toledo, supra,* at 686. The power of state legislators to enact statutes for deterrent, as well as punitive, purposes is unquestionably a legitimate exercise of state power. We thus find appellees' argument, that the forfeiture of a motor vehicle belonging to a third party is an unjust taking of property in violation of the due process provisions of the Ohio and United States Constitutions, to be without merit. Accordingly, we hold that a forfeiture, pursuant to R.C. 1531.20, of a motor vehicle used in violation of R.C. 1533.161, does not offend due process of law under the Constitutions of the United States and the state of Ohio.

The judgment of the court of appeals is reversed.

*Judgment reversed.*

CELEBREZZE, C.J., W. BROWN, C. BROWN and J. P. CELEBREZZE, JJ., concur.

HOLMES, J., dissents in part.

SWEENEY, J., dissents.

HOLMES, J., dissenting in part. Although I concur that a motor vehicle may be considered as an "other device" within the meaning of R.C. 1531.20, and therefore would be subject to forfeiture in a given case, I must dissent from that portion of the syllabus and opinion which grants forfeiture of such a vehicle where the owner had no knowledge of, nor consented to, the use of the vehicle by the offender. The denial of an appropriate hearing to the owner of such a vehicle in order to avoid forfeiture would violate the owner's due process rights.

I am aware that, historically, the law has permitted the forfeiture of inanimate objects which have been instrumental to, or used in, the violation of the law. It is also conceded that generally the innocence of the owner of the property subject to forfeiture as to any unlawful purpose for which his property is to be used, provides little by way of defense. *Calero-Toledo* v. *Pearson Yacht Leasing Co.* (1974), 416 U.S. 663. It would seem that this principle has prevailed in order to alert owners of property not to be negligent in the loaning, leasing or bailing of their property. See *Dobbins's Distillery* v. *United States* (1878), 96 U.S. 395; *Goldsmith-Grant Co.* v. *United States* (1921), 254 U.S. 505. As stated in *Pearson, supra,* at pages 687-688:

"* * * To the extent that such forfeiture provisions are applied to lessors, bailors, or secured creditors who are innocent of any wrongdoing, confiscation may have the desirable effect of inducing them to exercise greater care

in transferring possession of their property. Cf. *United States* v. *One Ford Coach,* 307 U.S. 219, 238-241 (1939) * * *."

The court, in *Pearson,* although permitting the forfeiture of the leased yacht used for the transportation of marijuana, felt that in certain instances it would not be lawful or equitable to retain the property of an innocent party who was unaware of the use of his property. Accordingly, the court stated, at pages 688-690, that:

"This is not to say, however, that the 'broad sweep' of forfeiture statutes remarked in [*United States* v. *United States*] *Coin & Currency* [(1971), 401 U.S. 715] could not, in other circumstances, give rise to serious constitutional questions. Mr. Chief Justice Marshall intimated as much over a century and a half ago in observing that 'a forfeiture can only be applied to those cases in which the means that are prescribed for the prevention of a forfeiture may be employed.' *Peisch* v. *Ware,* [8 U.S.] 4 Cranch 347, 363 (1808). It therefore has been implied that it would be difficult to reject the constitutional claim of an owner whose property subjected to forfeiture had been taken from him without his privity or consent. See, *id.,* at 364; *Goldsmith-Grant Co.* v. *United States,* 254 U.S., at 512; *United States* v. *One Ford Coupe Automobile,* 272 U.S., at 333; *Van Oster* v. *Kansas,* 272 U.S., at 467. Similarly, the same might be said of an owner who proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property; for, in that circumstance, it would be difficult to conclude that forfeiture served legitimate purposes and was not unduly oppressive. Cf. *Armstrong* v. *United States,* 364 U.S. 40, 49 (1960)."

In *Lindsay* v. *Cincinnati* (1961), 172 Ohio St. 137 [15 O.O.2d 278], this court did approve of the seizure of an automobile used in a violation of a municipal ordinance; however, in that case the facts show that the owner did lend the automobile to the individual who had violated the law. That case did not involve the use of an automobile which had been taken without the permission of the owner. Judge O'Neill stated, at page 139, that:

"* * * A different question would be presented in this case had the automobile here in question been stolen. However, that question is not presented in this case since the automobile with which we are here concerned was lent by the owner to the driver, although it was lent for a legal purpose, and, according to the record, the owner had no knowledge that it was to be used as a 'bootleg cab' or for any other illegal purpose."

Here we are faced with facts which would show that the defendant-employee had not obtained permission from the owner to use the automobile. Further, there are no facts presented which would show that the owner had previously allowed the employee to use automobiles for any such purpose. Additionally, there are no facts which would show any automobiles of the owner car dealership were outfitted with spotlights which could have been used by this employee or any other employee. In fact, contrary to the facts set forth within the majority opinion here, the spotlight used by this offend-

ing employee was his own portable spotlight which he had brought from home, and was not attached to the automobile.

For these and other reasons, I would hold that a due process hearing should have been afforded the owner on the forfeiture proceeding in order to present evidence of the unauthorized use of the automobile, its innocence of the intended and actual use of such automobile, and its attendant rights for the repossession of such vehicle.