465 So.2d 294 (1984)
Milton V. PHARR
v.
STATE of Mississippi.
No. 55015.
Supreme Court of Mississippi.
December 5, 1984.
*296 Thomas H. Comer, Jr., Comer & Jenkins, Booneville, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Henry C. Clay, III, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
ROBERTSON, Justice, for the Court:

I.
Headlighting deer is a sorry form of human behavior made unlawful by the wildlife conservation laws of this state. The deer, usually a doe, hit with the blinding light stands stupified and is slaughtered. In addition to his unsportsmanlike conduct, the poacher operates at night and endangers others each time he fires. He is of Snopesean genre.
Milton V. Pharr stands convicted of headlighting deer and other related offenses. His sentences include time and fines and suspension of his privilege to hunt. We affirm.

II.

A.
Prior to the date in question, officials of the State Department of Wildlife Conservation had been receiving complaints of "headlighting" in the Riverbend area in rural northern Leflore County, Mississippi. In the early morning hours of February 21, 1982, Robert Neely and Wardell Pittman, both officers of the Wildlife Conservation Department, went to this area to establish separate stake-outs.
At approximately 3:00 a.m. Officer Neely received a radio call from Officer Pittman to the effect that Pittman had heard gunshots. Neely got out of his truck. He could hear a vehicle on a public gravel road. Two or three minutes later Neely observed a slow-moving pick-up truck approaching from the east. A spotlight, coming from the truck, was being shined out over the fields on both sides of the road. According to Neely, "It was working both sides of that road there, working fields and woods". After the truck passed Neely, he followed it, his lights off.
The truck passed the Minter City Gin, turned south and ultimately reached and turned onto State Highway No. 8. At that *297 point Neely cut on his headlights and his "blue light". The truck stopped, but when Neely stopped and got out, the suspects took off again. Neely gave chase, ultimately forcing the suspect truck off the road.
In the truck Officer Neely found
(1) four men, including Milton V. Pharr, the Defendant below and Appellant here;
(2) two dead deer, both still warm and with blood running from their bodies;
(3) a Q-beam spotlight;
(4) a seven millimeter Magnum rifle, three spent shell casings and other ammunition; and
(5) one hand flashlight.
Blood was on the tailgate of the truck and on the bumper.
On this date, February 21, 1982, deer hunting was illegal.[1] The property on which the suspect vehicle was operating while Officer Neely observed it was known as Annapeg Plantation owned by the Stainback family. The property was posted with signs at the entrances to the property and along the roads three to every mile. These posted signs had been in place more than three months prior to the incident in question.

B.
Milton V. Pharr and his three companions were in due course charged with eight game and hunting law violations, misdemeanors all.[2] All were brought to trial before the County Court of Leflore County and convicted.
Pharr and two of the others then appealed to the Circuit Court of Leflore County where, on March 28, 1983, they were afforded consolidated trials de novo. That same day the jury found all three, including Pharr, guilty
(a) on three counts of headlighting deer in violation of Miss. Code Ann. § 49-7-95 (Supp. 1983), for which each has been sentenced to 30 days imprisonment, fined $1,000 on each count, and stripped of all hunting privileges for the next twelve months;
(b) on one count of trespassing in violation of Miss. Code Ann. § 97-17-93 (Supp. 1983), for which each has been fined $250; and
(c) upon two counts of possession of deer out-of-season in violation of Miss. Code Ann. § 49-7-37 (Supp. 1983), for which each has been fined $50 on each count.
Following the usual post-trial motions, Pharr has appealed[3] to this Court where his fundamental complaints are that the evidence does not support his convictions and that in any event the state is doubling up on him, turning what is a single set of events into six separate charges and convictions and ultimately sentences. For the reasons described below, we reject all of Pharr's assignments of error and affirm.

III.

A.
Our law is the witness and external deposit of the values and culture of our society.[4] Hunting and the outdoors have supplied much of that culture. They have informed our values and generated an ethical *298 code of their own, much of which has been enacted within the wildlife conservation laws of this state.
Our Presiding Justice Roy Noble Lee understands these truths. In Strong v. Bostick, 420 So.2d 1356, 1364 (Miss. 1982), he included himself among the many men who
feel that a person who has never seen squirrels jump from limb to limb in the deep swamp on a frosty Fall morning; or has never heard a wild turkey gobble in April or seen him strut during mating season; or has never watched a deer bound through the woods and fields, or heard a pack of hounds run a fox, or tree a coon (raccoon); or has never hunted the rabbit, or flushed a covey of quail ahead of a pointed bird dog; or has never angled for bass or caught bream on a light line and rod, or taken catfish from a trotline and limb hook; has never lived. 420 So.2d at 1364 [Emphasis added]
Moreover, Justice Lee has reminded us that
Present generations owe posterity the obligation to protect and conserve wildlife, a valuable and essential natural resource, in order that future generations may have game and fish for their enjoyment, pleasure and benefit.
420 So.2d at 1364.
In fulfillment of that obligation, our legislature has made the sort of conduct with which we are here concerned unlawful. Yet, more than the public policy of wild game conservation is served by this legislation. We here enforce the positive law's embodiment of the ethics of the hunt.
With insight and sensitivity, our most literate hunter, speaking of his short story, "The Bear", has said pursuit is the essence of the hunt, but
not only to pursue but to overtake and then have the compassion not to destroy, to catch, to touch, and then let go because then tomorrow you can pursue again. If you destroy it, what you caught, then it's gone, it's finished. And that to me is sometimes the greater part of valor ..., not to destroy what you have pursued. The pursuit's the thing, not the reward, not the gain."[5]
The thrill of the chase, the fair and honorable pursuit and not the kill undergird the ethics of the hunter.
This case concerned the slaughter of doe at night. As we review today's facts, we recall that old Ike McCaslin en route to deer camp in the Delta once said
The only fighting anywhere that ever had anything of God's blessing on it has been when men fought to protect does and fawns.[6]
We juxtapose against Old Ike's double entendre Henry Wyatt's pragmatism
"We don't kill does because if we did kill does in a few years there wouldn't even be any bucks left to kill, Uncle Ike".[7]
Headlighting is unlawful in this state whether its victims be buck, doe or fawn. Variously denominated "spotlighting", "jacklighting", "shining deer", or simply "headlighting", this conduct calls for more powerful words. Minnesota uses the term "nefarious". State v. Suess, 236 Minn. 174, 183, 52 N.W.2d 409, 415 (1952). The New Mexico legislature has employed the descriptive "despicable". State v. Barber, 91 N.M. 764, 765, 581 P.2d 27, 28 (1978). In this state "Snopesean" seems somehow appropriate.
In the first place, we are concerned with most unsportsmanlike conduct. We do not purport to understand the physiological process within the deer hit with a bright light at night but find that it has been similarly described by courts in Ohio[8], Minnesota[9], *299 Georgia[10] and Virginia[11]. As noted in State v. Suess, 236 Minn. 174, 52 N.W.2d 409 (1952),
"... such animals freeze in their tracks when the rays of a spotlight are suddenly cast upon them in the darkness of the night and are then easy prey to the deadly aim of an illegal hunter".
236 Minn. at 183, 52 N.W.2d at 415.
Not only is headlighting unsportsmanlike vis' a vis the deer, the genuine sportsman is deprived of legitimate hunting opportunities.
Poaching in general and headlighting in particular are the product of baser motives, the thrill of the quick and easy kill and the pursuit of profit. Precht, "To Catch a Poacher", Southern Outdoors 38, 39 (Jan.-Feb. 1982).
Discharge of firearms at night presents obvious dangers. Hunting after dark is universally condemned. See, e.g., Miss. Code Ann. § 49-7-59 (Supp. 1983). One does not have to look far to find documented cases where deer headlighters have in the pursuit of their sorry course killed or wounded innocent bystanders[12], game officials[13] and valuable livestock[14].
For these and other reasons, the practice of headlighting has been made unlawful in practically every state in the Union. State v. Morrison, 341 N.W.2d 635, 637-638 (S.D. 1983) (cases cited therein). It has been made expressly unlawful by the legislature of this state and stiff penalties provided. Such, in and of itself, is not enough, however, for the Snopesean poacher infects our times, and
the woods and fields he ravages and the game he devastates will be the consequence and signature of his crime and guilt, and his punishment.[15]
Informed by these thoughts we proceed to our institutional responsibility: the right interpretation and application of the law followed by the adjudication of this criminal appeal.

B.
Pharr has been charged, convicted and sentenced for three separate violations of the headlighting statute, Miss. Code Ann. § 49-7-95 (Supp. 1983) which provides as follows:
Any person who hunts or takes or kills any deer by headlighting or by any lighting device, shall, upon conviction thereof, be fined not less than five hundred dollars ($500.00) nor more than one thousand dollars ($1,000.00) and be imprisoned in the county jail for not less than five (5) nor more than fifteen (15) days. Be it further provided that violators of this section upon conviction shall forfeit all hunting privileges for a period of not less than twelve (12) consecutive months from date of conviction. This section shall not apply to deer killed in an accident with any motor vehicle. [Emphasis added]
Pharr claims that charging him with three separate counts of headlighting deer subjects him to a sort of triple-jeopardy. In plainest terms, Pharr contends that one evening of headlighting deer is one offense *300  no matter how many deer are killed. His argument runs squarely into the established authority of Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). See Smith v. State, 445 So.2d 227, 229 (Miss. 1984)(construing Blockburger); Smith v. State, 429 So.2d 252, 253-55 (Miss. 1983)(same); Hughes v. State, 401 So.2d 1100, 1103-05(Miss. 1981)(same). In a legally analogous context, Blockburger holds:
"Each of several successive [drug] sales constitutes a distinct offense, however closely they may follow each other ...
`The test is whether the individual acts are probihited, or the course of action which they constitute. If the former, then each act is punishable separately ... if the latter, there can be but one penalty.'" 284 U.S. at 302, 52 S.Ct. at 181, 76 L.Ed. at 308; see Smith v. State, 445 So.2d at 229 (single attack on church warranted five counts of armed robbery); see also, Ohio v. Johnson, ___ U.S. ___, ___, 104 S.Ct. 2536, 2540-2541, 81 L.Ed.2d 425, 433 (1984) (interprets notion of cumulative punishment); Missouri v. Hunter, 459 U.S. 359, 365-69, 103 S.Ct. 673, 677-79, 74 L.Ed.2d 535, 542-44 (1983).
Miss. Code Ann. § 49-7-95 (Supp. 1984) reads:
"Any person who hunts or takes or kills any deer by headlighting ... [shall be penalized]."
By its express terms, the statute prohibits both the individual act of hunting, taking or killing a deer and the course of action of hunting. Keep in mind here that one can be in the woods and never see a deer and still be "hunting".
According to the evidence, the three separate incidents of headlighting occurred in this way: First, Officer Neely observed the Q-beam light being thrown from one side of the road to the other, scanning the fields and the woods.[16] This is "headlighting". Nothing in the statute requires the killing of a deer or even the firing of a shot to constitute the offense of "headlighting"[17]Musgrove v. State, 236 Miss. 513, 516, 110 So.2d 919, 920 (1959).
The second and third offenses occurred prior in time to the headlighting witnessed by Officer Neely and are established circumstantially. Pharr and the others were found in possession of two recently-killed deer. This constitutes prima facie evidence that Pharr and the others had been hunting. Miss. Code Ann. § 49-7-49 (1972) provides, in relevant part:
The fact that any person shall be found ... in the possession of dead bodies of ... wild animals ... within the field, in the forest or on the public highways ..., shall be prima facie evidence that such person is or has been hunting, ... .
Pharr and the others were in possession of "headlighting" equipment. They were seen using it. Because of the night, spotting and killing a deer would have been next to impossible without the aid of power lighting. With respect to the two dead deer found in the group's possession, these circumstances were sufficient to establish that Pharr and the others had on two no doubt temporally related occasions hunted deer by the use of a lighting device. Coupled with subsequent occasion when Officer Neely witnessed the headlighting, we have three separate violations of the headlighting statute.
Separate acts though committed close in point of time to one another may constitute separate criminal offenses. See, e.g., Wilcher v. State, 455 So.2d 727 (Miss. 1984) and Wilcher v. State, 448 So.2d 927, 929 (Miss. 1984) (two killings on the same occasion constitutes two offenses of capital murder); Ball v. State, 437 So.2d 423, 425 (Miss. 1983) (assaults on three different law enforcement officers in a single series of *301 events on May 5, 1982, held to constitute three separate offenses); Maycock v. Reed, 328 So.2d 349, 352 (Miss. 1976) (sale of two bags of marijuana to two different people and two batches of LSD to the same two people held to constitute four offenses supporting four convictions and sentences). As stated in Ball v. State,
"Temporal proximity does not generate a juridical union of separate and distinct criminal acts, nor does the presence of a common nucleus of operative facts". 437 So.2d at 425.

C.

1.
Pharr challenges the sufficiency of the evidence to support his headlighting convictions. In doing so he appeals the trial court's denial of his alternative post-trial motions for judgment of acquittal notwithstanding the verdict (j.n.o.v.) or for a new trial. These motions are separate and distinct and perform different offices within our criminal procedural system, although the distinction is frequently blurred.
The motion for judgment of acquittal notwithstanding the verdict tests the legal sufficiency of the evidence supporting the verdict of guilty. It is a renewal of the defendant's request for a peremptory instruction made at the close of all the evidence. It asks the Court to hold, as a matter of law, that the verdict may not stand.
Where a defendant has moved for j.n.o.v., the trial court must consider all of the evidence  not just the evidence which supports the state's case  in the light most favorable to the state. May v. State, 460 So.2d 778, 781 (Miss. 1984). The state must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Glass v. State, 278 So.2d 384, 386 (Miss. 1973). If the facts and inferences so considered point in favor of the defendant with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, granting the motion is required. On the other hand, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied and the jury's verdict allowed to stand. May v. State, 460 So.2d 778, 781 (Miss. 1984).
In other words, once the jury has returned a verdict of guilty in a criminal case, we are not at liberty to direct that the defendant be discharged short of a conclusion on our part that the evidence, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty. May v. State, 460 So.2d 778, 781 (Miss. 1984); Fairchild v. State, 459 So.2d 793, 798 (Miss. 1984); Pearson v. State, 428 So.2d 1361, 1364 (Miss. 1983).
The motion for a new trial is an altogether different animal. While the motion for judgment of acquittal notwithstanding the verdict presents to the trial court a pure question of law, the motion for a new trial is addressed to the trial court's sound discretion. Fairchild v. State, 459 So.2d 793, 798 (Miss. 1984); Neal v. State, 451 So.2d 743, 760 (Miss. 1984). When he moves for a new trial, a defendant in a criminal case necessarily invokes Rule 5.16 of our Uniform Criminal Rules of Circuit Court Practice which in pertinent part provides:
Rule 5.16
New Trial
The court on written notice of the defendant may grant a new trial on any of the following grounds:
(1) if required in the interest of justice;
(2) if the verdict is contrary to law or the weight of the evidence; ... .
See May v. State, 460 So.2d 778, 781 (Miss. 1984); Fairchild v. State, 459 So.2d 793, 798-799 (Miss. 1984).
*302 That, as a matter of law, the motion for judgment of acquittal notwithstanding the verdict must be overruled and denied in no way controls the disposition of the motion for a new trial. Cases are hardly unfamiliar wherein the court holds that the evidence is sufficient so that one party or the other was not entitled to judgment notwithstanding the verdict but, nevertheless, that a new trial in the interest of justice should be ordered. See, e.g., Hux v. State, 234 So.2d 50, 51 (Miss. 1970); Quarles v. State, 199 So.2d 58, 61 (Miss. 1967); Mister v. State, 190 So.2d 869, 871 (Miss. 1966); Yelverton v. State, 191 So.2d 393, 394 (Miss. 1966).
A greater quantum of evidence favoring the state is necessary for the state to withstand a motion for a new trial, as distinguished from a motion for j.n.o.v. Under our established case law, the trial judge should set aside a jury's verdict only when, in the exercise of his sound discretion, he is convinced that the verdict is contrary to the substantial weight of the evidence. May v. State, 460 So.2d 778, 781 (Miss. 1984); Pearson v. State, 428 So.2d at 1364.
As we said in Groseclose v. State, 440 So.2d 297 (Miss. 1983)
We will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice. [citation omitted] Any less stringent rule would denigrate the constitutional power and responsibility of the jury in our criminal justice system.
440 So.2d at 300.

2.
We have two prior headlighting cases in which post-trial attacks were made upon guilty verdicts returned by juries. Musgrove v. State, 236 Miss. 513, 110 So.2d 919 (1959); Powell v. State, 205 So.2d 259 (Miss. 1967). The facts in Musgrove were:
"They saw appellants driving slowly at night on a sparsely-traveled public road, in an area inhabited by deer, with a spotlight out each side of their car and a shotgun loaded with buckshot in the front seat. Certainly reasonable men could conclude that they were hunting deer by headlighting." 236 Miss. at 516, 110 So.2d at 920.
Musgrove is on all fours with Pharr's facts and circumstances in the headlighting charge.
Powell v. State, 205 So.2d 259 (Miss. 1967) is to like effect although on arguably stronger proof. In Powell the defendants were seen driving slowly at night with their automobile headlights on, on a sparsely traveled public road, in an area inhabited by deer. Two shots were heard. A dead deer was found near the spot where the defendants had parked their automobile. When apprehended defendants had in their possession a recently fired shotgun capable of firing the type of ammunition used to kill deer.
The evidence tending to establish Pharr's guilt has been noted above. His defense on the facts, stated through brother and co-defendant, Donald Ricky Pharr, was that the foursome, lost and miles from where they were supposed to be, ran upon a pickup occupied by strangers and stopped to ask directions back to Merigold[18], only to find that the strangers had some beer and two dead deer in the back of their pickup which the foursome then purchased *303 and took off for Merigold. That this tale may not have been believed hardly evidences an irrational jury.
Suffice it to say that, when we apply the familiar standards described above to the evidence relating to the three headlighting convictions, affirmance on this assignment of error is required. The trial judge correctly denied Pharr's request for a peremptory instruction on the headlighting charges and, as well, his subsequent motion for judgment of acquittal notwithstanding the verdict of the jury. Furthermore, on this record the trial judge acted well within his discretion when he denied Pharr's alternative motion for a new trial.

IV.
The trespassing charge against Pharr has been brought under Miss. Code Ann. § 97-17-93 (Supp. 1983), which, in pertinent part, at the time in issue[19], provided as follows:
(1) The owner or occupant of any lands may post the same by placing conspicuously on the border of his premises and near the entrances thereto, notices that all persons are forbidden to enter thereon. Such notices must be plainly printed or painted, and it shall be sufficient for them to contain the word "posted." There shall be at least three (3) such notices for every mile of the boundary of the tract or along every public road and one (1) at every road entering the premises.
(2) It shall be unlawful for any person to knowingly enter the posted lands of another without permission of the owner or lessee, and upon conviction, such person shall be punished by a fine not exceeding two hundred fifty dollars ($250.00) for every offense. The fact that any person knowingly enters on the lands of another posted as herein provided, without possessing a written permission from the owner or lessee, shall be prima facie evidence of the violation of this section. Proof that the land has been so posted for three (3) months preceding such offense shall be prima facie evidence of knowledge that the owner or occupant did not assent to and was unwilling for the accused to enter upon the premises.
Miss. Code Ann. § 49-1-13 (Supp. 1983) provides that conservation officers such as Officers Neely and Pittman are charged with the enforcement of this statute.
Through Officer Neely, the State established that the Stainbacks' property, Annapeg Plantation, had been posted for at least three months preceding February 21, 1982, in conformity with Section 97-17-93(1). Neely observed the vehicle in which Pharr was traveling on and ultimately exiting from the Stainback property. Officer Neely further testified that when he returned to the area from which he saw Pharr's truck coming after the arrest, he found tire tracks going off the road to an area on Annapeg Plantation where he found footprints and spots of blood and a place where it looked like a deer had been dragged and put into a truck. From where he was stationed, Neely said he could have seen any vehicles in the area that night and that Pharr's vehicle was the only one he saw. Neither Pharr nor his companions offered any evidence that they had permission to be upon the Stainbacks' property.
Applying the standards enumerated above, we hold that on this evidence the trial judge correctly denied Pharr's request for a peremptory instruction on the charge of trespassing and his subsequent motion for judgment of acquittal notwithstanding the verdict of the jury. Similarly, we find nothing in the record to suggest that the trial judge abused his discretion when he refused to order a new trial.

V.
Finally, Pharr assigns as error the trial judge's granting at the request of the State *304 an instruction advising the jury that it could consider unexplained flight as evidence of guilt.
The evidence supporting the instruction was given through the testimony of Officer Neely. Recall that out on State Highway No. 8 Neely pulled up behind Pharr's pickup truck after it had stopped in response to Neely's blue flashing light. As Neely got out of his vehicle, Pharr fled. Neely had to get back in his vehicle, chase Pharr's truck, and ultimately force Pharr's truck off the road. There was no attempt by the defense to explain this flight. In this context the State requested and the jury was given Instruction No. S-1 which states that unexplained flight is a circumstance from which an inference of guilty knowledge may be inferred.
There are two separate bases upon which the issue tendered must be rejected. First, defense made no objection to Instruction No. S-1 at trial. This is hardly an "extreme case" under Rule 42, Miss.Sup. Ct.R. Accordingly, the issue ought to be procedurally barred. Second, under the most recent pronouncement of this Court concerning flight, Pannell v. State, 455 So.2d 785, 788 (Miss. 1984), and having due regard for the evidence at trial, the instruction was proper.

VI.
Though we affirm on all other points, the case must be remanded to the Circuit Court for clarification of the imprisonment portion of the sentences imposed.
Pharr has been finally convicted of three counts of headlighting in violation of Miss. Code Ann. § 49-7-95 (Supp. 1983). The sentencing order entered March 28, 1983, in relevant part, provides
that for the crime of HEADLIGHTING, three (3) counts of which they the said Milton Pharr ... [and two others] stand convicted that they be and they hereby are sentenced to thirty (30) days in the County Jail and fined One Thousand ($1,00.00) [sic] on each count; ... [Emphasis added]
The sentencing order appears to provide that Pharr has been sentenced to thirty days confinement on each count. Such a sentence would be unlawful. Section 49-7-95 authorizes imprisonment "in the county jail not less than five (5) days nor more than fifteen (15) days". This means not less than five nor more than fifteen days on each count.
The trial judge may have intended a ten day sentence on each conviction with the sentences to run consecutively, yielding an aggregate thirty day sentence. If he did so intend, that intent has not been expressed.
This case is remanded to the Circuit Court of Leflore County for clarification of the imprisonment component of the sentences imposed upon the three headlighting convictions. In all other respects, this case stands affirmed.
AFFIRMED AND REMANDED FOR CLARIFICATION OF SENTENCE.
PATTERSON, C.J., ROY NOBLE LEE, P.J., and PRATHER and SULLIVAN, JJ., concur.
WALKER, P.J., and HAWKINS, BOWLING and DAN M. LEE, JJ., concur in part, dissent in part.
HAWKINS, Justice, concurring in part and dissenting in part:
I concur in Pharr's conviction of one count of headlighting deer and possession of deer out of season. I would reverse on the remaining charges.
Around 3:00 a.m. a game warden observed occupants of a pick-up truck shining a high-powered spotlight on each side of a county road. When the pick-up was stopped, carcasses of two young buck deer were found in the bed of the pick-up. Pharr and three others were in the truck.
All four were convicted in the county court of Leflore County. Three appealed to the Circuit Court where, as the majority notes, they were convicted of:
(a) three offenses of headlighting deer in violation of Miss. Code Ann. § 49-7-95 *305 (Supp. 1983), each sentenced to thirty days, and fined $1,000 for each crime;
(b) one offense of trespassing in violation of Miss. Code Ann. § 97-17-93 (Supp. 1983), and each fined $250;
(c) two offenses of possession of deer out of season in violation of Miss. Code Ann. § 49-7-37 (Supp. 1983), and each fined $50 for each offense.
Beginning with the two offenses of possession of deer out of season, I would affirm the conviction upon these charges.
I do not believe the record supports a conviction for trespassing. The pickup was first observed traveling along a graveled county road.
As to the three convictions of headlighting, Miss. Code Ann. § 49-7-95 (Supp. 1983) states:
§ 49-7-95 Headlighting  penalty
Any person who hunts or takes or kills any deer by headlighting or by any lighting device, shall, upon conviction thereof ...
In my view the statute means that if any person is "headlighting" deer by hunting or taking or killing is guilty of one crime. To me the statute is saying it does not take all three of these elements to constitute the crime of "headlighting," but is complete upon a person's doing any one of the three acts, namely: hunting, or taking, or killing. But, the fact a person performs all three acts in committing the crime of "headlighting" does not make it three distinct and separate crimes.
The conservation officer observed the defendants in the act of headlighting along a county road.
I would therefore affirm Pharr's conviction for one offense of headlighting, for which he could be sentenced to pay a fine of $1,000 and serve 15 days in the county jail, as well as lose all hunting privileges for a year.
How the possession of two dead carcasses conclusively proves that each of these defendants previously committed two more crimes of headlighting is a mystery to me. Now, they may have killed these two deer by headlighting, it may even be said it was likely they killed them by headlighting. But, to say the state proved beyond all reasonable doubt and to the exclusion of every reasonable hypothesis than that of guilt that those two carcasses found in the bed of the pickup had been slain in no other manner than by "headlighting" can only exist in the mind of the majority. No reasonable hypothesis these carcasses could for any reason have been in that truck bed except they were killed by these defendants headlighting?
So much for the degree of proof we require in criminal cases.
The problem with the majority's thinking does not end here, however.
These defendants were found in possession of two deer carcasses in violation of § 49-7-57. Under the provisions of § 49-7-49, possession of these dead deer was prima facie evidence of "hunting, trapping or fishing" (not "headlighting," however). They were subject to penalties as provided in § 49-7-101. They were prosecuted and convicted for possession of two dead deer, two separate crimes.
To convict them of the possession of two dead deer out of season, and use these identical facts to tack on two additional crimes of "headlighting" violates Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), in my view.
Neither do I concur in the sanctimonious language in the majority opinion. Pharr is being dealt with severely, in any event, by his convictions. He was wrong; I expect he above all others is remorseful. I see no need for him and his family bearing the additional burden of this Court's castigation.
WALKER, P.J., and BOWLING and DAN M. LEE, JJ., join this opinion.
NOTES
[1] The legal deer season fixed under Miss. Code Ann. § 49-7-31 (1972), had ended January 2, 1982.
[2] This Court has recently reiterated the Mississippi ban on multi-count indictments. Johnson v. State, 452 So.2d 850, 853 (Miss. 1984); Stinson v. State, 443 So.2d 869, 870-873 (Miss. 1983). Nothing in those cases purports to apply the rule to misdemeanors. Further, Pharr has made no objection, either at trial or here, to all charges having been stated in a single affidavit.
[3] The appeals of co-defendants, Dalton R. Franks and Malvin Jaffords, Jr., though once perfected, were dismissed on May 9, 1984. That action has no effect on the instant appeal of Milton V. Pharr which remains wholly perfected and is now ripe for decision on its merits.
[4] Cf. Holmes, The Path of the Law, 10 Harv.L. Rev. 457, 459 (1897) ("The law is the witness and external deposit of our moral life. Its history is the history of the moral development of the race.")
[5] F. Gwynn & J. Glotner, eds., Faulkner In The University 271-272 (1959).
[6] Faulkner, Go Down, Moses 339 (1940)
[7] Faulkner, Go Down, Moses 347 (1940)
[8] State Division of Wildlife v. Barker, 8 Ohio St.3d 39, 457 N.E.2d 312 (1983)

Jacklighting involves shining a light into the eyes of the deer. The deer will then freeze, making it an easy target for the hunter. 8 Ohio St.3d at 39, 457 N.E.2d at 313.
[9] State v. Suess, 236 Minn. 174, 183, 52 N.W.2d 409, 415 (1952) (see quotation in text above).
[10] Stephens v. Lindsey, 304 F. Supp. 203 (S.D.Ga. 1969)

The illegal hunters ride along in an automobile and shine a light across the fields until the eyes of a deer are spotted. The light mesmerizes the deer and they can be easily shot. 304 F. Supp. at 204.
[11] Yeatts v. Minton, 211 Va. 402, 403 n. 1, 177 S.E.2d 646, 467 n. 1 (1970) (quoting from Stephens v. Lindsey).
[12] United States v. Shaw, 701 F.2d 367, 376, 380, 383, 394 (5th Cir.1983) (nine year old boy killed by one claiming to have been headlighting deer near Natchez Trace).
[13] Oney v. State, 397 A.2d 1374, 1376 (Del. 1979) (deer spotlighters fired on game official); Whitaker v. Jefferson Standard Life Ins. Co., 213 N.C. 376, 377, 196 S.E. 328, 328-29 (1938) (game warden killed by deer headlighters).
[14] State v. Openshaw, 172 Mont. 511, 513, 565 P.2d 319, 320 (1977) (defendant shot steer while headlighting deer).
[15] Faulkner, Go Down, Moses 349 (1940).
[16] The evidence does not make clear that Pharr was the one of the four member poaching party who actually did the headlighting. As an active participant in the evening's events, Pharr is chargeable as a principal. State v. Labella, 232 So.2d 354, 355 (Miss. 1970).
[17] This is a common approach to the offense of headlighting. See, e.g., State v. Erickson, 55 Wis.2d 150, 152-53, 197 N.W.2d 729, 730-31 (1972) (shooting or killing not required).
[18] Donald Ricky Pharr testified that earlier in the evening the group had been in Merigold. They were drinking beer and were about to run out. Donald told the group he had some beer back in Sledge. Sledge is some 68 miles away, somewhat further no doubt than the nearest all night convenience store that sold beer. Anyway, while supposedly on the way back from Sledge, Donald testified that the group got lost. Indisputably, they wound up in the Riverbend area of northern Leflore County, some 64 miles to the southeast of Sledge and approximately 38 miles east of Merigold. Most people traveling from Merigold to Sledge to get beer would not get that lost on the way back. A brief look at a map of the Delta makes this point more graphically.
[19] Section 97-17-93 has been amended by virtue of Miss. Laws of 1984, chapter 504 [Senate Bill No. 2673]. Because that amendment did not take effect until July 1, 1984, we need not concern ourselves with it.