463 So.2d 1064 (1985)
Alfonso WILLIAMS and Larry Williams
v.
STATE of Mississippi.
No. 55188.
Supreme Court of Mississippi.
January 30, 1985.
*1065 Travis T. Vance, Jr., Eugene A. Perrier, Vance & Perrier, Vicksburg, for appellants.
Edwin Lloyd Pittman, Atty. Gen. by Anita Mathews Stamps and DeWitt Allred, Sp. Asst. Attys. Gen., Jackson, for appellee.
*1066 Before PATTERSON, C.J., and DAN M. LEE and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This case involves two brothers who were engaged in a small-time sale of an illegal controlled substance. On sharply conflicting evidence, the jury convicted and under our established rules applicable when we are considering on appeal the sufficiency of the evidence to support jury verdicts, we must affirm. In this sense, this case is unremarkable.
Here as in many other drug cases we find the State developing its case and presenting its evidence at trial through the use of a confidential informant. There is a disquieting feature of such activity in this case in that the informant, an ex-drug offender himself, was paid on a contingency fee basis. The potential for a miscarriage of justice in such cases is obvious.
Upon mature consideration of the matter, however, we have concluded that so long as the full facts and circumstances of the State's arrangement with its "bounty hunter" are disclosed to the jury, we will not disturb a subsequent conviction. Here as elsewhere the question of the credibility of witnesses is uniquely within the province of the jury. Because the circumstances involving the paid confidential informant here were submitted to the jury, we affirm.

II.

A.
Larry and Alfonso Williams have been convicted of the sale of an illegal controlled substance, to-wit: marijuana in violation of Miss. Code Ann. § 41-29-139(a)(1) (Supp. 1984). That statute makes it unlawful in this state for any person to "sell, barter, [or] transfer" marijuana.
At the outset we note that substantial knowing participation in the consummation of a sale or in arranging for the sale may render one guilty of the illegal sale of unlawful controlled substances within Section 41-29-139. One who aids and abets another in such a context is an accessory before the fact and is guilty as a principal. Sanders v. State, 439 So.2d 1271, 1275 (Miss. 1983); McGowan v. State, 375 So.2d 987, 990 (Miss. 1979); Landers v. State, 304 So.2d 641, 642 (Miss. 1974).
Moreover, the mere fact that no profit has been earned on the sale avails defendant nothing. In Boone v. State, 291 So.2d 182 (Miss. 1974), the Court noted
It is certainly true that the defendant did not realize a profit on the transaction but Miss. Code Ann. § 41-29-139(c)(2) (1972) does not contemplate that the seller must realize a profit in order to be guilty of the sale of a controlled substance. The statute simply says that the crime occurs whenever a controlled substance is transferred or delivered in exchange for remuneration, whether in money or other consideration. 291 So.2d at 184.

B.
These principles well in mind, we consider the evidence, as we must, in the light most favorable to the State. On February 11, 1983, narcotics agent Bill Mayo and paid confidential informant Billy Saulters asked Alfonso Williams and Larry Williams to locate for them a quarter pound of marijuana. Prior to that time, Saulters had made the acquaintance of Larry Williams. Larry had subsequently introduced Alfonso, his brother, to both Agent Mayo and the confidential informer Saulter.
On February 11, 1983, the Williams brothers met with Mayo and Saulter in Vicksburg, Mississippi. Based on previous discussions between Alfonso and Mayo, the purpose was to consummate the purchase of marijuana. The Williamses instructed Mayo and Saulters to follow them, each twosome in their respective automobiles.
A short time later, the cars stopped and Larry got out of Alfonso's car and got into the car with Agent Mayo. Alfonso was gone about twenty minutes and returned with an unidentified person, each in his respective car. During the interim, Larry *1067 conferred with Mayo and Saulters and assured them of the quality and quantity of the anticipated marijuana and also quoted the price of $210.00 for a quarter pound of the substance.
Upon Alfonso's return, Agent Mayo and Saulter got out and transacted the sale with Alfonso and the unidentified person. Agent Mayo took the money out of his pocket and handed it to Alfonso who appeared to count it and then threw it on the seat of his car. Alfonso's unidentified companion consequently handed him a brown bag containing the subject controlled substance. Agent Mayo and Saulter then proceeded back to their car, while Larry joined his brother Alfonso and the other unidentified person. The sales transaction was completed.
On the witness stand, Larry Williams acknowledged that all four men went in search of the subject drug and that the transaction was physically made between Mayo and Saulter, who paid consideration, and Alfonso and the unidentified individual, who gave them, in exchange, 2.8 ounces of marijuana. Alfonso Williams admitted that he had arranged the whole scenario.

C.
On June 5, 1983, the Grand Jury of Warren County returned an indictment charging Alfonso Williams and Larry Williams with the sale and transfer unto Bill Mayo of an illegal controlled substance, to-wit: 97 grams of marijuana for the sum of $190.00, in violation of Miss. Code Ann. § 41-29-139 (1972).
The case was called for trial in the Circuit Court of Warren County, Mississippi, on June 28, 1983. The defense offered by the Williamses were that they had been engaged by Saulters to work for the State, that they indeed set up the sale in order to enable the authorities to "bust" the unidentified third person, and that Saulters had doublecrossed them by implicating them in an illegal controlled substances transaction.
The case against Larry Williams and Alfonso Williams was presented to the jury which in due course found each guilty of the sale of more than one ounce of marijuana as charged in the indictment. On June 30, 1983, each of the Williams brothers was sentenced by the Circuit Court to serve a term of three years in the custody of the Mississippi Department of Corrections. Miss. Code Ann. § 41-29-139(c)(2)(C).
Following denial of the usual post-trial motions, this appeal has been timely perfected.

III.
The Appellants Williams challenge the sufficiency of the evidence to support their respective convictions of the sale of marijuana. In so doing each appeals the trial court's denial of his alternative post-trial motions for judgment of acquittal notwithstanding the verdict or for a new trial.
The motion for judgment of acquittal notwithstanding the verdict tests the legal sufficiency of the evidence supporting the verdict of guilty. Where a defendant has moved for, the trial court must consider all of the evidence  not just the evidence which supports the State's case  in the light most favorable to the State. Pharr v. State, 465 So.2d 294, 301 (Miss. 1984); May v. State, 460 So.2d 778, 781 (Miss. 1984); Sadler v. State, 407 So.2d 95, 97 (Miss. 1981). The credible evidence which is consistent with the verdict must be accepted as true. Spikes v. State, 302 So.2d 250, 251 (Miss. 1974).
The State must be given the benefit of all reasonable inferences that may be drawn from the evidence and which are consistent with the verdict. Glass v. State, 278 So.2d 384, 386 (Miss. 1973). If the facts and inferences so considered point in favor of the defendant with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, granting the motion is required. Pharr v. State, 465 So.2d at 301; May v. State, 460 So.2d at 781. On the other hand, if there is substantial evidence opposed to the motion, that is, evidence of *1068 such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied and the jury's verdict allowed to stand. Pharr v. State, 465 So.2d at 301; May v. State, 460 So.2d at 781.
In other words, once the jury has returned a verdict of guilty in a criminal case, we are not at liberty to direct that the defendant be discharged short of a conclusion on our part from that the evidence, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty. Fairchild v. State, 459 So.2d 793, 798 (Miss. 1984); May v. State, 460 So.2d at 781; Pearson v. State, 428 So.2d 1361, 1364 (Miss. 1983). When we apply this standard to the evidence in the record, we may only state that the trial judge correctly denied both Larry Williams and Alfonso Williams request for a peremptory instruction as well as the subsequent motion of each for judgment of acquittal notwithstanding the verdict of the jury.
The motion for a new trial is somewhat different. That motion is addressed to the sound discretion of the trial court. Pharr v. State, 465 So.2d at 301-302; Fairchild v. State, 459 So.2d at 798-99; Neal v. State, 451 So.2d 743, 760 (Miss. 1964). Under our practice, the trial court, in its discretion, may grant a new trial if such is required in the interest of justice or if the verdict is contrary to law or the weight of the evidence. Rule 5.16, Unif. Crim.R. of Cir.Ct.Prac.; Neal v. State, 451 So.2d at 760; Fairchild v. State, 459 So.2d at 799. Having due consideration for the controlling substantive rules of law and their application to the evidence recited at the outset of this opinion, we hold that the trial judge acted well within his discretion when he denied the separate motions of Larry Williams and Alphonso Williams for a new trial.

IV.
The relationship between the State and the confidential informant Billy Saulters calls for a special comment. The evidence reflects that Saulters is a past drug offender himself who has done time in the Mississippi State Penitentiary. Saulters for all practical purposes had become a bounty hunter for the State who was paid by the scalp. Unlike many other undercover agents or confidential informants who are paid on a straight salary, or nothing at all, the evidence reflects that Saulters was paid on a per bust basis with the amount of his fee to escalate as the type of illegal controlled substance involved increased in perceived dangerousness.
The record further reflects that, upon his release from custody, Saulters had had a difficult time securing employment. He had to work as the State's paid bounty hunter because he could find no other work. Indeed it appears that Saulters had the strongest possible motivation for arranging a significant number of drug "busts" per month  he had no other way to feed and financially support his family.
It goes without saying that the credibility of the testimony of such a witness is a matter of serious concern. Beyond that, we find little uplifting in the State's decision to enter into such an unseemly arrangement with an ex-convict. In this context, we have considered carefully whether we ought to sanction convictions obtained through the employment of the services and, particularly, the testimony of such drug bounty hunters.
We find in the State of Florida the reversal of a drug conviction because the state used a confidential informant paid on a contingency fee basis. State v. Glosson, 441 So.2d 1178 (Fla. Dist. Ct. App. 1983). It is tempting to second the statement of the Glosson Court that:
We cannot tolerate such behavior under our system of constitutional protections. 441 So.2d at 1179.
We find also that the United States Court of Appeals for the Fifth Circuit has traditionally taken the position that contingency *1069 fee confidential informants are almost as detestable as the drug offenders they would ferret out. Williamson v. United States, 311 F.2d 441 (5th Cir.1962), holds that, in the absence of justification or explanation, a conviction based on evidence of an informer hired under a contingent fee arrangement may not stand. In condemning this practice the Fifth Circuit observed "the opportunities for abuse [in this practice] are too obvious to require elaboration". 311 F.2d at 444.
Beyond these cases, we find little support for the cause of Larry and Alfonso Williams on this issue. Williamson has been severely restricted by the Fifth Circuit in recent years. United States v. Lane, 693 F.2d 385, 388 (5th Cir.1982). It is now limited to situations where the specific defendant was picked out for the informer's efforts by a government agent. Brown v. Edwards, 721 F.2d 1442, 1454 (5th Cir.1984). It does not appear that Williamson has been followed in any other circuit, or that it has been sanctioned by the Supreme Court of the United States.
Turning to our own law, we find first that our legislature has authorized the payment of confidential informants. Miss. Code Ann. § 41-29-160 (1972) provides, in pertinent part:
The director [of the Mississippi Bureau of Narcotics] is authorized to pay any person such sum or sums of money as he may deem appropriate for information concerning a violation of this article from funds appropriated for the Bureau of Narcotics.
Nothing in the statute prohibits a contingency compensation arrangement.
This Court has had frequent occasions to affirm criminal convictions obtained through the efforts of informants employed by police to purchase narcotics from persons suspected of involvement in illegal controlled substances. See Alston v. State, 258 So.2d 436, 438 (Miss. 1972); Howell v. State, 246 So.2d 95, 96 (Miss. 1971).
It is generally recognized that the prosecuting authorities may use informants and pay them, in that it is often necessary for the government to use artifices and strategem to ferret out criminal activities. United States v. Ramirez, 710 F.2d 535, 541 (9th Cir.1983) (citing Sorrels v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932)).
Having due regard for the difficulties confronting law enforcement officers with respect to the enforcement of our laws respecting the sale of controlled substances, Miss. Code Ann. §§ 41-29-101, et seq. (Supp. 1984), we would be remiss in our duties were we to bar the testimony of contingency fee informants.
There is an antidote for the legitimate concern regarding the credibility of such witnesses which is consistent with the public interest in effective law enforcement. The function of judging the credibility of witnesses has historically been vested in the trier of the facts. Culbreath v. Johnson, 427 So.2d 705, 708 (Miss. 1983). In criminal prosecutions, of course, that is the jury. Warren v. State, 456 So.2d 735, 738 (Miss. 1984); Browning v. State, 450 So.2d 789, 791 (Miss. 1984); Pate v. State, 419 So.2d 1324, 1326 (Miss. 1982); McCormick v. State, 279 So.2d 596, 597 (Miss. 1973). Where, as here, the full facts and circumstances of the State's arrangement with its bounty hunter witness are disclosed to the jury and where that witness is subject to cross-examination we will not disturb on this account a subsequent guilty verdict. The conduct of the Bureau of Narcotics will have to reach a level of outrageousness not present here before we will consider and take further action.
AFFIRMED
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.